# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| SARAH FELIX, formerly known as SARAH M. ELLIS, individually and on behalf of a class of similarly situated persons, | Civil Action |
| Plaintiff, | File No.  2:16-cv-00066-WCO |
| v. | CLASS ACTION JURY TRIAL |
| SUNTRUST MORTGAGE, INC., | |
| Defendant. | |

## COMPLAINT

Steven Rosenwasser
Naveen Ramachandrappa
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309

Adam Hoipkemier
Matthew Wetherington
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305

Jeffrey W. DeLoach
Kevin E. Epps
FORTSON, BENTLEY AND GRIFFIN, P.A.
2500 Daniell's Bridge Rd Bldg 200, Ste 3A
Athens, GA 30606

# TABLE OF CONTENTS

Summary ...................................................................................................1

Parties .....................................................................................................3

Jurisdiction ...............................................................................................3

Fact Allegations .......................................................................................5

     A.    Borrowers Pay For And The FHA Supplies Mortgage Insurance
         To Lenders.......................................................................................5

     B.    The FHA Prohibits Lenders From Charging Post-Payment
         Interest On FHA-Insured Loans, Unless They First Provide The
         FHA-Approved Form. ......................................................................6

     C.    Lenders Have Collected Billions Of Dollars In Post-Payment
         Interest On FHA-Insured Loans.......................................................12

     D.    SunTrust Did Not Provide The FHA-Approved Form To Sarah
         Felix Before Collecting Post-Payment Interest..................................17

Class Action Allegations.............................................................................20

Count One – Breach Of Contract..................................................................25

Count Two – Expenses of Litigation .............................................................27

Count Three – Georgia Usury.......................................................................28

Relief Requested ........................................................................................30

## Summary

1.     Defendant SunTrust Mortgage, Inc. has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans.  As a result, SunTrust has collected tens of millions of dollars in post-payment interest in an unlawful manner, and through this breach of contract class action, Plaintiff seeks damages and other available remedies on behalf of herself and the class.

2.     Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan.  For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3.     A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans.  Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by [FHA] regulations**."  Multistate – FHA Fixed Rate Note,

1 of 30

USFHA.NTE, attached as Exhibit 1, at 2.

4.     The FHA regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the** [**FHA**]."  24 C.F.R. § 203.558 (c) (2014) (emphasis added).

5.     The FHA requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges.  *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C), attached as Exhibit 2.

6.     Although both the uniform provisions of the note and the FHA regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with the FHA-approved form, SunTrust does not use the FHA-approved form.  Instead, SunTrust uses its own unauthorized form, which is not approved by the FHA and does not fairly disclose the terms under which SunTrust can collect post-payment interest or properly explain how borrowers can avoid such charges.

7.     Because SunTrust does not use the FHA-approved form as required by both the uniform provisions of the note and the FHA regulations, SunTrust has no right to collect post-payment interest from borrowers.  Yet, SunTrust has unlawfully collected tens of millions of dollars in post-payment interest from Plaintiffs and the class, and through this class action, Plaintiff seeks damages and other available remedies on behalf of herself and the class.

## Parties

8.     Plaintiff Sarah Felix, formerly known as Sarah M. Ellis, is a citizen of Georgia, currently residing in Statham, Georgia.  In 2015, Felix paid off an FHA-insured loan held by Defendant SunTrust Mortgage, Inc.

9.     Defendant SunTrust Mortgage, Inc. is a mortgage company.  SunTrust held FHA-insured loans for Felix and other class members, for which the class has paid the full unpaid principal of the loans.

10.     SunTrust is a Virginia corporation with its principal place of business in Richmond, Virginia.

## Jurisdiction

11.     This Court has subject matter jurisdiction over this class action.  Felix is a citizen of a State different from SunTrust, and so are many other class members.  See 28 U.S.C. § 1332 (d)(2).  And the claims of the class in the

aggregate exceed the minimally required amount in controversy.  See 28 U.S.C. §

1332 (d)(6).    In fact, the amount in controversy involves tens of millions of

dollars.

12.    This Court has personal jurisdiction over SunTrust.  SunTrust is

authorized to do business in Georgia and, thus, is treated as a Georgia resident for

purposes of personal jurisdiction.  *See* Ga. Sec'y of State,

https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=588059

&businessType=Foreign%20Profit%20Corporation.

13.    Even if SunTrust Mortgage were not a Georgia resident, SunTrust

Mortgage "[t]ransacts [ ] business within this state" and, thus, is subject to personal

jurisdiction under Georgia's long-arm statute.  O.C.G.A. § 9-10-91.

14.    SunTrust Mortgage can be served through its registered agent, which

is Corporation Service Company, located at 40 Technology Parkway, South Suite

300, Ben Hill, Norcross, Georgia, 30092.

15.    This Court is also a proper venue for this action.  SunTrust Mortgage

is subject to personal jurisdiction in the Northern District of Georgia, which "[f]or

purposes of venue," means that SunTrust Mortgage resides in this judicial district.

28 U.S.C. § 1391 (b)(1), (c).  Also, "a substantial part of the events or omissions

giving rise to the claim" occurred in the Northern District of Georgia.  28 U.S.C. §

1391 (b)(2).

## Fact Allegations

**A.      Borrowers Pay For And The FHA Supplies Mortgage Insurance To Lenders.**

16.      Department of Housing and Urban Development is a department within the executive branch of the United States government.  HUD was established in 1965 by the Department of Housing and Urban Development Act. *See* 42 U.S.C. § 3532.  Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

17.      Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes.  *See* U.S. Dep't of Housing and Urban Devt.,

http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.

The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes.  *Id.*

18.      Mortgage insurance protects lenders against losses that are caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA

mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

19.     To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

**B.      The FHA Prohibits Lenders From Charging Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form.**

20.     One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

> 2.      BORROWER'S PROMISE TO PAY; INTEREST
> In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis altered).

21.     Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues.  This makes sense because, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

22.     In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

23.     However, for nearly thirty years, the FHA maintained a policy different from the other government agencies.  For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

24.     This type of interest is often referred to as "post-payment" interest. Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been

paid, and the lender has all the money it was owed.  The lender is penalizing the borrower for paying the loan before the maturity date.

25.     Although the FHA permits lenders to collect post-payment interest, the FHA has imposed strict limitations on the lender's ability to do so.  The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations.  And the FHA regulations require the lender to provide the borrower with the FHA-approved disclosure form.

26.     The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

> 5.     BORROWER'S RIGHT TO PREPAY
> **Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**.  Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 (emphasis altered).[1]

---

[1] Felix's note is a fixed rate note, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA

27.     Under this provision, the borrower has the right to prepay the full

unpaid principal without charge or penalty on the **first** of the month.  The borrower

also has the right to prepay the full unpaid principal on days **other than** the first;

provided however that, in such cases, the lender can collect post-payment interest

for the remainder of that month **if the lender complies with FHA regulations**.

28.     The relevant FHA regulation is titled "Handling Prepayments" and

provides that:

> (a) Notwithstanding the terms of the mortgage, the [lender] may
> accept a prepayment at any time and in any amount.  **Except as set
> out below, monthly interest on the debt must be calculated on the
> actual unpaid principal balance** of the loan.
> . . .
> (c) If the prepayment is offered on other than an installment due
> date [the first of the month], the [lender] may refuse to accept the
> prepayment until the next installment due date (the first day of the
> month), or may require payment of interest to that date, **but only if
> the [lender] so advises the [borrower], in a form approved by the
> Commissioner**, in response to the [borrower's] inquiry, request for
> payoff figures, or tender of prepayment.
> . . .
> (e) If the [lender] fails to meet the full disclosure requirements
> of paragraphs (b) and (c) of this section, the [lender] may be subject to
> forfeiture of that portion of interest collected for the period beyond the
> date that prepayment in full was received and to such other actions as
> are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

---

adjustable rate notes, the same uniform provision regarding the borrower's right to
prepay is located at section 6.  There is no difference in the relevant language.

29.    Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

30.    For mortgages insured on or after August 2, 1985 and through January 20, 2015, the FHA-approved form is Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____     Date: _____
Address: _____     Loan #: _____
_____     FHA#: _____

    This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

    This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

    The _____(mortgagee name)_____ will:

(a)    [ ]    accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)   [ ]   only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

_____

NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact ____(name and/or department) ___at___(telephone number)___.

_____

Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

31.    As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage."  HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2, attached as Exhibit 3 (emphasis added).

32.    HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined.  **Otherwise**, **the [lender] must forfeit any**

**interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

33.     And HUD expressly instructs lenders that "[**n**]**one of the HUD-required language should be deleted**." *Id.* at 2 (emphasis added).

34.     In sum, pursuant to the uniform provisions of the note and FHA regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**.  If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.     Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

35.     From August 2, 1985 through January 20, 2015, lenders including SunTrust have collected billions of dollars in post-payment interest.

36.     The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-

ginnie-mae-fha-borrowers, attached as Exhibit 4.  The NAR further "estimate[s]

that during 2003, . . . FHA customers who terminated their loans paid an average

of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those

borrowers of **$587 million**."  *Id.* (emphasis added).

37.   "HUD doesn't get the interest, lenders do.  In effect, **lenders are**

**getting interest for money that isn't outstanding**.  This may not sound like a big

deal, but according to HUD, such post-payment interest charges cost borrowers

**$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages*

*Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015,

http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-

changing-in-2015/, attached as Exhibit 5 (emphasis added).

38.   "This practice . . . has cost consumers staggering amounts, with

estimates ranging into the **hundreds of millions of dollars a year** during periods

when mortgage rates were high."  Kenneth R. Harney, *FHA Will Stop Lenders*

*From Charging Extra Interest When Homeowners Sell or Refinance*, Washington

Post, Sep. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-

lenders-from-charging-extra-interest-when-homeowners-sell-or-

refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html,

attached as Exhibit 6 (emphasis added).

39.    "[**T**]**he clear loser** in the full-month interest policy **is 'the one who can least afford it, the consumer**."  Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added).  "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

40.    Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors."  Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330, attached as Exhibit 7 (emphasis added).

41.    All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

42.    On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties.  74 Fed. Reg. 43232, 43232 (Aug. 26, 2009).  The Board stated that "[o]ne such example [of a

14 of 30

prepayment penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

43.     On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).  Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due." *Id.* at 6444.

44.     This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . . In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**.  The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

45.     Based on Regulation Z's definition, charges for post-payment interest

are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

46.     In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest."  79 Fed. Reg. 50835, 50835.  And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges."  *Id.*

47.     Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount."  24 C.F.R. § 203.558 (a).  "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date."  *Id.*

48.     Although CFPB, FRB, and HUD have now all prohibited post-

payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive.  "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.    SunTrust Did Not Provide The FHA-Approved Form To Sarah Felix Before Collecting Post-Payment Interest.**

49.    On October 6, 2009, SunTrust loaned Sarah Felix money for the purchase of a home in Winder, Georgia.  Felix's loan was insured by FHA, and so SunTrust is required to comply with FHA regulations with respect to her loan.

50.    Pursuant to FHA regulations, Felix's promissory note contains certain uniform provisions found in the note for every FHA-insured loan.  These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay."  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

51.    In 2015, Felix sold her home.  So that she could pay off her loan held by SunTrust, Felix requested that SunTrust provide her with a payoff statement.

52.    SunTrust provided a payoff statement dated April 6, 2015.  The statement is a form document, in which SunTrust uses form language throughout

the document and fills in only the particular numbers and address information that correspond to a specific borrower.  *See* Apr. 6, 2013 Payoff Statement, From SunTrust, To Sarah Ellis, attached as Exhibit 8.

53.    The form includes the statements "[t]he current total unpaid Principal Balance is $ "; "TOTAL AMOUNT DUE TO PAY LOAN IN FULL"; and "interest of [ ] per month ." *Id.* at 1.

54.    The statement contains the following specific numbers for Felix's loan: "[t]he current total unpaid Principal Balance is: $ 82,302.34"; "[t]his loan is due for the May 01, 2015 payment," "**Interest at 5.75000% [$] 394.37**"; "Pro Rata MIP [$] 101.19," "Recording Fee [$] 12.00," "Expedited P/O Stmt [$] 5.00," and "TOTAL AMOUNT DUE TO PAY LOAN IN FULL * * * $ 82,814.90." *Id.* (emphasis added).

55.    Felix's interest payments were $394.37 per month.  Thus, by representing that Felix owed $394.37 in interest, SunTrust charged and sought to collect interest for **the entire month** of April 2015, even though the payoff statement was issued on April 6, 2015.  *Id.*

56.    On April 8, 2015, Felix paid SunTrust $82,814.90, which includes the $394.37 in interest SunTrust represented it was owed.  And because SunTrust required Felix to pay interest for the entire month of April 2015 – even though

18 of 30

Felix paid the full unpaid principal on April 8, 2015 – SunTrust collected post-payment interest.

57.     However, SunTrust did not first provide Felix with the FHA-approved form.  For one, the form used by SunTrust is not an FHA-approved form, and FHA approval is an **express** requirement of FHA regulations.

58.     Moreover, SunTrust's unauthorized form is both misleading and confusing.  It represents that interest will be calculated on a "**per Month**" basis and this per-month interest is part of the "**TOTAL AMOUNT DUE TO PAY LOAN IN FULL**." *Id.* at 1 (emphasis added).  SunTrust's form then discusses the possibility the borrower will have to pay "**additional interest**." *Id.* (emphasis added).

59.     Because the language in SunTrust's form is unconditional, SunTrust wrongly tells Felix that, even if payment is made on the first of the month, interest will be calculated on a "per Month" basis and this per-month interest is part of the "TOTAL AMOUNT DUE TO PAY IN LOAN IN FULL" – which both the uniform provisions of the note and FHA regulations clearly prohibit SunTrust from doing.  See Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

19 of 30

60.     The form further reinforces the misleading and confusing nature of that language.  It discusses the possibility Felix will have to pay "additional interest."  Apr. 6, 2013 Payoff Statement, From SunTrust, To Sarah Ellis, at 1. Because this language follows statements that Felix owes interest on a per-month basis, SunTrust wrongly tells Felix that, no matter what, she will have to pay interest through the end of the first month, and only addresses how to avoid payment of interest for an "additional" month.  *Id.*

## Class Action Allegations

61.     Plaintiff asserts claims on behalf of herself and on behalf of a class similarly-situated persons pursuant to Rule 23 (b)(3).  *See* Fed R. Civ. P. 23 (b).

62.     Plaintiff proposes the following classes and sub-classes, while reserving the right to modify these definitions.  *See* Fed. R. Civ. P. 23 (c).

    a.     Borrowers of SunTrust Class – any person who had a loan (i) insured by FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (ii) that was held by SunTrust as of the day payment of the full unpaid principal was made, and (iii) for which SunTrust collected interest for any period after payment of the full unpaid principal was made.

    b.     Georgia Borrowers of SunTrust Sub-Class – any person who

had a loan (i) insured by FHA at any time during the period beginning on August 2, 1985 and ending on January 20, 2015, (ii) that was held by SunTrust as of the day payment of the full unpaid principal was made, (iii) for which SunTrust collected interest for any period after payment of the full unpaid principal was made, and (iv) financed real property in Georgia.

63.     Together, the "class" consists of the Borrowers of SunTrust Class and Georgia Borrowers of SunTrust Sub-Class.

64.     Plaintiff proposes certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue.  *See* Fed. R. Civ. P. 23 (c).

65.     Felix would serve as the class representative for the Borrowers of SunTrust Class and Georgia Borrowers of SunTrust Sub-Class.

66.     Plaintiff satisfies the requirements of Rule 23 (a).

   a.   <u>Numerosity</u> – The classes and sub-classes are so numerous that joinder is impracticable.  FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes.  And SunTrust is one of the nation's largest mortgage lenders.  Plaintiff estimates that the class

21 of 30

consists of tens of thousands of persons.

b. <u>Commonality</u> – There are numerous common questions of law

and fact, including but not limited to the following:

   i.   The promissory notes for FHA-insured loans contain

uniform provisions that require lenders to comply with

FHA regulations before collecting post-payment interest.

The essential issue in this case is whether, before

collecting post-payment interest, SunTrust complied with

the FHA regulation requiring that it provide the borrower

"a **form** approved by the Commissioner, in response to

the [borrower's] inquiry, request for payoff figures, or

tender of prepayment."  24 C.F.R. § 203.558 (2014)

(emphasis added).  Because SunTrust uses **form** payoff

statements, the answer to this essential question will be

common to all members of the class.  The forms used by

SunTrust either are or are not the FHA-approved form

and that answer will be true for the entire class.

   ii.   Other common questions are whether SunTrust is liable

in breach of contract for not providing borrowers with the

FHA-approved form before charging post-payment

interest on FHA-insured loans held by SunTrust; whether

SunTrust is liable under Georgia attorney fees statutes for

stubborn litigious, bad faith, or unnecessary trouble and

expenses in requiring Plaintiff to litigate this matter; and

whether SunTrust is liable under Georgia usury law for

not providing borrowers with the FHA-approved form

before charging post-payment interest on FHA-insured

loans.

c.      Typicality – Plaintiff's claims are typical of the classes' and

subclasses' claims.  Plaintiff's promissory note is not just

typical of the rest of the class, but it is identical with respect to

relevant provisions at issue in this case.  Further, because

SunTrust uses form payoff statements, Plaintiff has been

subject to conduct that is typical of the rest of the class.

SunTrust has sought to collect post-payment interest from

Plaintiff in the same manner that it has sought to collect post-

payment interest from the rest of the class.

d.      Adequacy – Plaintiff would adequately protect the class's

interests.  Plaintiff has a genuine interest in protecting the rights of the class and Plaintiff's counsel is experienced in handling complex class actions.  Indeed, Plaintiff's counsel has been designated and approved as class counsel in numerous state and federal courts.  Further, because Plaintiff challenges form payoff statements used by SunTrust, the interests of Plaintiff and the classes are aligned.

67.    Plaintiff satisfies the requirements of Rule 23 (b)(3).

     a.    <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class.  If Plaintiff establishes that SunTrust breached or would breach the contracts by not complying with FHA regulations, it will establish liability for all class members, without the need for any additional proof as to liability.  Thus, common issues predominate over individual issues.

     b.    <u>Superiority</u> – A class action is superior to other available remedies.  The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action.  Indeed, because of the low dollar

amounts at stake for each class member, a class action is the
only way for Plaintiff and other class members to obtain
redress.  Moreover, the most efficient way to resolve the class's
claims is for a court to decide all claims in a single class.
Requiring hundreds of thousands of class members to
individually litigate their claims over and over again in various
courts would be vastly inefficient.  It also raises the possibility
of inconsistent judgments.

**Count One – Breach Of Contract**

68.    Felix asserts a breach of contract claim against SunTrust, on behalf of
herself, the Borrowers of SunTrust Class, and the Georgia Borrowers of SunTrust
Sub-Class.  Felix seeks damages for SunTrust's improper collection of post-
payment interest payments.

69.    Felix and each member of the Borrowers of SunTrust Class and the
Georgia Borrowers of SunTrust Sub-Class had a contract with SunTrust.  The
terms of the contract are set forth in the promissory note.  The note is a form
contract containing certain provisions that are identical to provisions found in the
notes for every FHA-insured loan.

70.    In section 2 of the note, "BORROWER'S PROMISE TO PAY;

25 of 30

INTEREST," SunTrust agreed that "[i]nterest will be charged on **unpaid**

principal" and only "until the full amount of the principal has been paid."

Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1 (emphasis altered).

71.     In section 5 of the note, "BORROWER'S RIGHT TO PREPAY,"

SunTrust agreed that it would charge "interest on the amount prepaid for the

remainder of the month" only "to the extent . . . **permitted by regulations of the**

**Secretary**."  *Id.* at 2 (emphasis altered).

72.     The relevant FHA regulation, titled "Handling Prepayments,"

provides that, "[e]**xcept as set out** [**in this regulation**], monthly interest on debt

must be calculated on the actual unpaid principal balance of the loan."  24 C.F.R. §

203.558 (a) (2014) (emphasis added).   "If the prepayment is offered on other than

an installment due date [the first of the month], the [lender] . . . may require

payment of interest to that date, but **only if** [the lender] so advises the [borrower],

**in a form approved by the Commissioner**, in response to the [borrower's]

inquiry, request for payoff figures, or tender of prepayment."  24 C.F.R. § 203.558

(c) (2014) (emphasis added).

73.     In addition to the express terms of the note, the law implies a duty of

good faith and fair dealing, and SunTrust is subject to this duty as well.

74.     SunTrust breached the contract by collecting post-payment interest

payments from Felix and the other members of the Borrowers of SunTrust Class and the Georgia Borrowers of SunTrust Sub-Class without first providing the FHA-approved form.

75.     Felix and the other members of the Borrowers of SunTrust Class and the Georgia Borrowers of SunTrust Sub-Class were injured by SunTrust's breach and seek damages for SunTrust's unlawful collection of post-payment interest. They seek damages for interest collected for the period beyond payment of the full unpaid principal.

**Count Two – Expenses of Litigation**

76.     Felix asserts a claim under Georgia statutory law for expenses of litigation on behalf of herself and the Georgia Borrowers of SunTrust Sub-Class. *See* O.C.G.A. § 13-6-11.  Felix seeks recovery of expenses of litigation, including but not limited to recovery of attorney fees.

77.     SunTrust has acted in bad faith, has been stubbornly litigious, and has caused Felix and the other members of the Georgia Borrowers of SunTrust Sub-Class unnecessary trouble in expense by demanding post-payment interest while continuing to use forms that are clearly not the FHA-approved form.  As such, SunTrust is liable for expenses of litigation, including but not limited to recovery of attorney fees.

## Count Three – Georgia Usury

78.     Felix asserts a claim under the Georgia usury law on behalf of herself and the Georgia Borrowers of SunTrust Sub-Class.  *See* O.C.G.A. §§ 7-4-2, 7-4-10.  Felix seeks damages and all other available remedies for SunTrust's improper collection of pre-payment penalties in violation of Georgia usury law.  *Id.*

79.     Felix and each member of the Georgia Borrowers of SunTrust Sub-Class had a contract with SunTrust.  The terms of the contract are set forth in the promissory note.  The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

80.     In Section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST," the lender agreed that "[i]nterest will be charged on **unpaid** principal" and only "until the full amount of the principal has been paid." Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1 (emphasis altered).

81.     In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," the lender agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . **permitted by regulations of the Secretary**."  *Id.* at 2 (emphasis altered).

82.     The relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]**xcept as set out** [**in this regulation**], monthly interest on debt

must be calculated on the actual unpaid principal balance of the loan."  24 C.F.R. §

203.558 (a) (2014) (emphasis added).   "If the prepayment is offered on other than

an installment due date [the first of the month], the [lender] . . . may require

payment of interest to that date, but **only if** [the lender] so advises the [borrower],

**in a form approved by the Commissioner**, in response to the [borrower's]

inquiry, request for payoff figures, or tender of prepayment."  24 C.F.R. § 203.558

(c) (2014) (emphasis added).

83.    In addition to the express terms of the note, the law implies a duty of

good faith and fair dealing, and the lender is subject to this duty as well.

84.    By collecting post-payment interest from Felix and the other members

of the Borrowers of SunTrust Class and the Georgia Borrowers of SunTrust Sub-

Class without first providing the FHA-approved form, SunTrust imposed and

collected pre-payment penalties without authority to do so under the contract.

85.    As such, SunTrust has violated Georgia usury law, which prohibits the

collection of pre-payment penalties not authorized by contract.  *See* O.C.G.A. § 7-

4-2 (b)(2) ("Unless stipulated in the contract, **there shall be no prepayment

penalty**.") (emphasis added).

86.    Felix and other members of the Borrowers of SunTrust Sub-Class

have been injured by SunTrust's violations of Georgia usury law, and they seek

damages and all available statutory remedies for SunTrust's improper collection of pre-payment penalties in violation of Georgia usury law.  *See* O.C.G.A. § 7-4-10.

## Relief Requested

87.   Plaintiff asks this Court to:

    a.   certify this action as a class action, including certifying Plaintiff as class representative and undersigned counsel as class counsel;

    b.   grant judgment as a matter of law in favor of Plaintiff and the class on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

    c.   award Plaintiff any damages they are entitled to, including but not limited to, compensatory damages, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

    d.   and grant other such relief as deem proper and just.

Plaintiff submits this complaint on April 4, 2016.

**/s/ Naveen Ramachandrappa**

Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA  30309
404-881-4151
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com

Adam Hoipkemier
Ga. Bar No. 745811
Matthew Wetherington
Ga. Bar No. 339639
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305
404-564-4329
adam@wernerlaw.com
matt@wernerlaw.com

Jeffrey W. DeLoach
Ga. Bar No. 081669
Kevin E. Epps
Ga. Bar No. 785511
FORTSON, BENTLEY AND
GRIFFIN, P.A.
2500 Daniell's Bridge Rd
Bldg 200, Ste 3A
Athens, GA 30606
706-548-1151
jwd@fbglaw.com

kee@fbglaw.com

**Attorneys for Plaintiff**