**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| SARAH FELIX, formerly known as SARAH M. ELLIS, individually and on behalf of a class,<br><br>       Plaintiff,<br><br>v.<br><br>SUNTRUST MORTGAGE, INC.,<br><br>       Defendant. | Civil Action No.<br>2:16-CV-00066-RWS<br><br>CLASS ACTION<br>JURY TRIAL |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS SETTLEMENT**

Plaintiff Sarah Felix ("Plaintiff") has negotiated a proposed settlement (the "Settlement") of the class claims she asserted against SunTrust Mortgage, Inc. ("SunTrust").  Plaintiff respectfully moves this Court to enter an order in the form proposed as Exhibit 1, thereby:

    (1)    Certifying a class for the purpose of Settlement;

    (2)    Granting preliminary approval of the Settlement;

    (3)    Approving the forms of notice proposed by plaintiff to notify the class members of the Settlement;

    (4)    Setting deadlines for opting out, objecting and the filing of fee and service award applications; and

    (5)    Scheduling a final approval hearing to consider any comments or objections and to make a final ruling on Settlement approval.

As detailed below, the Settlement calls for SunTrust to (i) pay $3.5 million into a settlement fund; (ii) disclose post-payment interest in a form approved by the FHA/HUD Commissioner for a period of at least three years and (iii) incur all fees and costs associated with

providing notice and administering the Settlement.  The class will obtain these benefits without the risk of litigation, and without the substantial delay that would occur if this Settlement was not reached and this case instead proceeded through class certification, trial and appeal, which could take an additional two to four years.  As set forth below, the Settlement is fair, reasonable and adequate, and should be preliminarily approved.

## I.     SUMMARY OF THE CLASS CLAIMS

In this putative class action, Plaintiff alleges that SunTrust breached its uniform contract with her and the putative class by collecting post-payment interest without the contractual authority to do so.

Pursuant to HUD regulations, all notes underlying FHA-insured loans must contain certain uniform provisions.  Dkt. No. 1 ¶¶ 20-21, 26.  One of those uniform provisions can be found in Section 2, which provides that "[i]nterest will be charged on **unpaid principal**" and "**until** the full amount of principal has been paid."  *Id.,* ¶ 20; Dkt. No. 1-1 at 2 (emphasis added).  Thus, Section 2 of the uniform note prohibits SunTrust from collecting post-payment interest; *i.e.*, interest for a time period after the full outstanding balance of the loan has been paid.  Yet, SunTrust collected such interest from Plaintiff and the class.  Dkt. No. 1 ¶¶ 55-56, 74.

SunTrust contends that it did not breach the uniform note because it was permitted to collect post-payment interest under Section 5, which contains a limited exception to the prohibition against post-payment interest.  *Id.* ¶ 71.  In particular, Section 5 permits SunTrust to collect post-payment interest only "to the extent . . . **permitted by regulations of the [HUD]**

**Secretary**."[1]  *Id.* (emphasis added).  Plaintiff contends that SunTrust cannot rely on this limited exception because SunTrust did not comply with HUD regulations.  Specifically, Plaintiff contends that SunTrust did not comply with 24 C.F.R. § 203.558, which requires that, in response to an inquiry, request for payoff figures or tenders of prepayment, SunTrust must make certain disclosures regarding post-payment interest "in a form approved by the [HUD/FHA] Commissioner."  *Id.* ¶ 72.  Plaintiff contends that SunTrust did not comply with this regulation because the form document it provided to Plaintiff and the putative class in response to inquiries, requests for payoff figures or tenders of prepayment was not approved by the HUD/FHA Commissioner.  *Id.* ¶¶ 72-74.  In short, because SunTrust did not comply with HUD regulations incorporated into the uniform note, it was not permitted to collect post-payment interest and breached the note by doing so.

Plaintiff also asserts a claim for usury under Georgia law on behalf of a subclass of Georgia borrowers.  *Id.* ¶¶ 78-86.  Georgia usury law provides that "[u]nless stipulated in the contract, there shall be no prepayment penalty."  O.C.G.A. § 7-4-2(b)(2).  Here, the only stipulated penalty in the uniform note can be found in Section 5, which provides that for a "prepayment" made after "the first day of any month," "Borrower pays interest on the amount prepaid for the remainder of the month to the extent . . . permitted by the regulations of the Secretary."  Dkt. No. 1-1 at 3.  Plaintiff contends that because SunTrust did not provide Plaintiff and the class with a HUD-approved form, SunTrust did not collect post-payment interest "to the extent . . . permitted by regulations of the Secretary."  Dkt. No. 1 ¶¶ 57, 71, 81.  In other words,

---

[1] This same uniform language appears in Section 5 for fixed-rate notes for FHA-insured loans and Section 6 for adjustable-rate notes for FHA-insured loans. Other than placement in a different section, the language addressing post-payment interest is the same for both types of notes.

SunTrust collected a penalty not stipulated in the contract, and thus in violation of Georgia's usury law.

## II.     SUMMARY OF THE PROPOSED SETTLEMENTS

### A.     <u>Principal Settlement Terms</u>

Plaintiff has negotiated and executed a formal Settlement with SunTrust, subject to Court approval.  The full Settlement agreement is attached as Exhibit 2.[2]  In short, the Settlement provides that:

(i)     SunTrust must pay $3.5 million, which will be used to compensate class members, as well as to pay any class representative service award and any award of attorneys' fees and expenses;

(ii)     For a period of three years, SunTrust must, in response to any inquiry, request for payoff figures or tender of prepayment, provide the required disclosures relating to post-payment interest in a form approved by the HUD/FHA Commissioner;[3] and

(iii)     SunTrust must pay all fees and costs associated with providing notice and administering the Settlement, which shall be in addition to the $3.5 million payment referenced above.

*See* Ex. 2 ¶¶ II and III.  In exchange for these benefits, class members who do not opt out of the Settlement will release any claims they have against SunTrust "that arise[] out of or relate[] to

---

[2] The agreement allows SunTrust to terminate the Settlement if opt outs by class members reach a certain threshold.  To reduce the risk of improper solicitation and manipulation of opt outs, Plaintiff has not submitted the details of this provision with this motion.  In the event the Court wishes to review the details of the termination provision, Plaintiff asks for leave to submit those details solely to the Court for *in camera* review.

[3] This injunctive relief pertains solely to the types of loans at issue in this case; *i.e.*, FHA-insured loans dated prior to January 20, 2015.

SunTrust's collection of post-payment interest on any Class Member's FHA-insured note at issue in the Action."  *Id.* ¶ VI(C)(1).

### B.    <u>Settlement Class Definition</u>

Plaintiff seeks certification of the following class for settlement purposes only (the "Class"):

> Any person who had a FHA-insured loan for which (i) the date of the note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) SunTrust or a SunTrust affiliate – as of the date the total amount due on the loan was brought to zero – was the lender, mortgagee, or otherwise held legal title to the note; (iii) SunTrust collected interest for any period after the total amount due on the loan was brought to zero (i.e., SunTrust collected "post-payment interest"); and (iv) SunTrust collected post-payment interest during the statute of limitations period applicable for the loan as shown by Exhibit A.[4]

*Id.* ¶ 1.  Based on these criteria and SunTrust's business practices, persons who had a loan brought to zero on the last calendar day of a month or on the first business day of a month are not included in the Class.  Further, excluded from the Class is anyone who received a payoff form that SunTrust began using on or after April 1, 2016 (which is the date that SunTrust changed its payoff form).  For purposes of notice, the parties will compile a mailing list of the Class members using SunTrust's mortgagee data.

## III.    THE COURT SHOULD CERTIFY A CLASS FOR SETTLEMENT PURPOSES

Plaintiff asks the Court to certify the Class described above for the purpose of entering a Settlement with SunTrust.  "Federal courts have long recognized a strong policy and presumption in favor of class action settlements."  *Gevaerts v. TD Bank*, *N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of

---

[4] A copy of Exhibit A is attached hereto at Exhibit 2 at Exhibit A.

amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).  However, the Court must find that the other requirements of Rule 23(a) and (b) are satisfied.  *Id.*  "Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621.   That unity is present here.

First, the federal caselaw emphasizes that class certification is an appropriate and important remedy in consumer cases, particularly where, as here, if class certification is denied, the costs of an individual lawsuit would exceed the recovery any individual Class member could receive.  *See, e.g., Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014) ("where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, [] the class action mechanism provides one of its most important social benefits"); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 407 (S.D.N.Y. 2015) (in consumer cases, class actions are "an important enforcement device"); *McDowell Valley Vineyards, Inc. v. Sabate USA, Inc.*, No. C-04-078 SC, 2004 WL 1771574, at *5 (N.D. Cal. Aug. 6, 2004) (consumer class actions "serve important roles in the enforcement of consumers' rights").

Second, Plaintiff easily satisfies the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy:

Numerosity – "The numerosity requirement is satisfied if the proposed class is so numerous that joinder of all members is impracticable." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 689

(N.D. Ga. 2003). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Here, the proposed class consists of over 40,000 members, easily satisfying numerosity. *See* Ex. 3 (Howle Affidavit) ¶¶ 10-11.

<u>Commonality</u> – "To satisfy the commonality requirement, Plaintiff must show the presence of questions of law or fact common to the entire class." *In re Tri-State Crematory Litig.*, 215 F.R.D at 690. "The commonality requirement 'does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Delta/AirTran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *4 (N.D. Ga. July 12, 2016). Indeed, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The Eleventh Circuit has described the commonality requirement as a "low hurdle" to overcome. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).

The commonality requirement is easily met here, as there are several material common questions of law and fact. For example, on Plaintiff's affirmative claims, the common questions include, but are not limited to:

* Whether the uniform note SunTrust entered into with Plaintiff and the Class prohibits the collection of post-payment interest unless such interest is collected as "permitted by regulations of the [HUD] Secretary";

* Whether, in response to an inquiry, request for payoff figures or tenders of prepayment, the HUD regulations incorporated into the uniform note require SunTrust to provide certain disclosures relating to post-payment interest in "a form approved by the [HUD] Commissioner";

* Whether Plaintiff and the Class can assert a claim for breach of HUD regulations incorporated in the uniform note;

     *       Whether in response to inquiries, requests for payoff figures or tenders of prepayment, the form document discussing post-payment interest that SunTrust provided to Class members was approved by the FHA or HUD Commissioner;

     *       Whether, under Georgia usury law, the post-payment interest collected by SunTrust from the class is a pre-payment penalty stipulated in the uniform note; and

     *       Whether SunTrust failed to collect post-payment interest in a manner stipulated in the uniform note as required under Georgia's usury law.

The presence of these and other common questions of law and fact satisfy the "low hurdle" of satisfying commonality.  *Id.*

Commonality is further established because Plaintiff's and the Class's claims arise out of a form contract, and "the alleged breach of standard-form contracts are particularly appropriate for class action."  *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 46 (E.D.N.Y. 2008); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 667 (D. Kan. 2004) (commonality satisfied because claims involve "standard form contract"); *Flanagan v. Allstate Ins. Co.,* 242 F.R.D. 421, 428 (N.D. Ill. 2007) ( "Claims arising out of form contracts are particularly appropriate for class action treatment").  Indeed, "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."  *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004).

Typicality – Typicality is satisfied when the Plaintiff's claims and the Class's claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  To satisfy this standard, the Plaintiff's "interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members."  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).  However, "[t]he interests and claims of Named Plaintiffs and class members

need not be identical to satisfy typicality." *DG ex rel Strickland*, 594 F.3d 1188 (10th Cir. 2010). Rather, "[w]hen the class representative's claim and the claims of the other 'class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality'." *In re Quick Cash, Inc.*, 541 B.R. 526, 534 (Bankr. D.N.M. 2015) (*quoting DG v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010)).

The typicality requirement is satisfied here. Plaintiff's claims and each Class member's claim arises from the same practice; *i.e.*, SunTrust failing to provide an HUD-approved form in response to inquiries, requests for payoff figures or tenders of pre-payment. Further, Plaintiff's interest in prosecuting her own case simultaneously advances the interests of the absent Class members because the evidence Plaintiff needs to demonstrate that the form she received was not approved by the FHA or HUD is the same evidence the absent Class members will need to prove that same fact.

Further, like commonality, typicality is satisfied because this case involves a form contract. "[C]ourts have found typicality where there is a common contract at issue, reasoning that 'the similiarity of the contractual forms… is, in the Court's view, a significant factor favoring a finding of typicality." *Med. Protective Co. v. Center for Advanced Spine Tech.*, No. 1:14-cv:5, 2015 WL 4653220, at *9 (S.D. Ohio Aug. 5, 2015) (*quoting In re Arthur Treacher's Franchise Litig.*, 93 F.R.D. 590, 596-97 (E.D. Pa. 1982)). *See also Doherty v. Hertz Corp.*, No. 10-359, 2014 WL 2916494, at *4 (D.N.J. June 25, 2014) (typicality satisfied because the case involves "the use of a form Hertz contract"); *Brown v. Consumer Law Assoc., LLC*, 283 F.R.D. 602, 613 (E.D. Wash. 2012) (typicality satisfied in case involving a form contract because plaintiff and the class "will be asserting identical claims involving a similar injury and arising from a same course of conduct").

<u>Adequacy</u> – Plaintiff and Class Counsel easily satisfy the adequacy requirement. Adequacy is established when "class members share common objections and the same factual and legal positions and have the same interest in establishing the liability of defendants." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 2016 WL 3770957, at *4. Here, Plaintiff and the Class all share the same factual and legal positions given that Plaintiff and the Class all are subject to, and assert a breach of, the same provisions of the uniform note. Further, Plaintiff and the Class share the common objective of recovering the post-payment interest SunTrust collected in breach of the uniform note.

Class Counsel also easily satisfies the adequacy requirement. Bondurant, Mixson & Elmore, LLP ("BME") has extensive experience handling class actions, having litigated over 50 class actions on behalf of both plaintiffs and defendants. *See* Ex. 4 (Rosenwasser Affidavit) ¶ 3 and Exhibit A. Further, Class Counsel has personally litigated numerous class actions, including, without limitation,: (i) Steven Rosenwasser litigated a class action race discrimination case against The Coca-Cola Company (which settled for $192.5 million, the largest settlement of a discrimination case at the time), Federal Express (which settled for $21.5 million) and Synovus Bank (which settled for $34 million); (ii) Naveen Ramachandrappa has served as counsel of record in a class action against Federal Express Corporation (which settled for $21.5 million) and as counsel of record in a class action against ADP; and (iii) Adam Hoipkemeier, Jeffrey DeLoach and Kevin Epps have been appointed as lead counsel in a class action that recovered more than $3 million and obtained injunctive relief on behalf of a class of more than 12,000 customers of a chain of rent-to-own stores. *See* Ex. 4 (Rosenwasser Aff) ¶ 4; Ex. 5 (Ramachandrappa Decl.) ¶¶ 5-6; Ex. 6 (Hoipkemeir Decl.) ¶ 5.

Third, Rule 23(b)(3) is satisfied. Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting individual members,

and that a class action is superior to other available methods to fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the common questions overwhelmingly predominate. Plaintiff's individual claim, and each Class member's claim, largely stands or falls on the common question of whether the form SunTrust provided them in response to inquiries, requests for payoff figures or tenders of prepayment was approved by the FHA or HUD. Indeed, if it was not approved, liability is established for Plaintiff and every member of the Class.

Further, because the average class member's damages are a few hundred dollars, this case presents a "negative value suit"; *i.e.*, a case where an individual suit will cost a Class member more than he or she could recover. One of the "most compelling rationale[s] for finding superiority in a class action" is "the existence of a negative value suit." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). That is because where, as here, the costs of litigating exceed the potential recovery, there is no alternative to class actions for "fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)). Further, even if the cost of individual lawsuits did not exceed the potential recovery, proceeding on an individual basis would result in duplicative, unnecessary work for the parties and the Court. Indeed, the facts and evidence relevant to show that the form document SunTrust provided borrowers in response to inquiries, requests for payoff figures or tenders of prepayment was not approved by the FHA or HUD is the same for every member of the Class. It would be a waste of the parties and this Court's time and resources if every one of the over 40,000 Class members needed to conduct discovery on the fact that SunTrust's form was not FHA approved.

Accordingly, this Court should certify a Class, as defined above, for the purpose of settlement.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENTS

### A.    The Law Governing Approval of Class Settlements

Approval of a class action settlement occurs in several steps.  First, the district court conducts a preliminary evaluation of the fairness and adequacy of the settlement to determine whether there is good reason to schedule a full fairness hearing and notify the settlement class.[5] This examination is generally "made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties."  Manual for Complex Litigation (Fourth) § 21.632, at 320-21.

"The purpose of this cursory examination is to detect defects in the settlement that would risk making 'notice to the class, with its attendant expenses, and a hearing ... futile gestures.'"  *In re Electronic Data Sys. Corp. "ERISA" Litig.*, No. 6:03-MD-1512, 2005 WL 1875545, at *4 (E.D. Tex. June 30, 2005) (quoting Newberg on Class Actions § 11:25 (4th ed. 2002)).  "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits,' for 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'  Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation."  *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (citation omitted).

If the settlement appears to be fair and adequate upon a preliminary examination, then the district court directs the plaintiff to send notice of the proposed settlement to the class.  After

---

[5] *See* Manual for Complex Litigation, Fourth § 21.632 at 320-21; *In re Skinner Group, Inc.*, 206 B.R. 252, 261-62 (Bankr. N.D. Ga. 1997); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

receiving any comments and objections from the class members, the court conducts a final

fairness hearing on settlement approval.  Manual for Complex Litigation, Fourth, § 21.632 at

320-21; *In re Skinner*, 206 B.R. at 261-62; *McNamara*, 214 F.R.D. at 426; *In re Prudential Ins.*,

962 F. Supp. at 562.

At this final fairness hearing, the district court evaluates the settlement in light of the

following factors "(1) the existence of fraud or collusion [among the parties in reaching]

the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of

the proceedings at which the settlement was achieved and the amount of discovery completed;

(4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and the substance and amount of

opposition to the settlement." *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1531 n.6

(11th Cir. 1994).  The district court evaluates these six factors in light of "the strong judicial

policy favoring settlement as well as by the realization that compromise is the essence of

settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  "Particularly in class

action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559

F.2d 1326, 1331 (5th Cir. 1977).  "[A]ccordingly class-action settlements will be disapproved

only upon 'considerable circumspection." *Mashburn v. National Healthcare, Inc.*, 684 F. Supp.

660, 667 (M.D. Ala. 1988) (quoting *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D.

Pa. 1975)).

This means that, "in evaluating the terms of the compromise in relation to the likely

benefits of a successful trial, the trial judge ought not try the case in the settlement hearings.  . . .

It cannot be overemphasized that neither the trial court in approving the settlement nor this Court

in reviewing that approval have the right or the duty to reach any ultimate conclusions on the

issues of fact and law which underlie the merits of the dispute." *Cotton*, 559 F.2d at 1330.

"Neither should it be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'"  *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y.1972)).  "In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton*, 559 F.2d at 1330 (citation omitted).

### B.    The Court Should Grant Preliminary Approval of the Settlement

This Settlement is at the first stage described above, in which the Court conducts a preliminary examination to determine whether the settlement appears to be fair, reasonable and adequate and that there is good reason to give notice to the Class.  With a forward eye towards the factors for final approval identified in *Cotton* and *Bennett*, the Court should grant preliminary approval of the Settlement and order Plaintiff to notify the Class.

"The existence of fraud or collusion among the parties in reaching the settlement" – "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."  *Saccoccio v. JPMorgan Chase Bank*, *N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).  Here, the Settlement was the result of hard-fought negotiations, which required the intervention of an independent third-party mediator, Ralph Levy.  Courts have consistently held that the presence of an independent mediator belies any suggestion of fraud or collusion.  *See, e.g., Montoya v. PNC Bank, N.A.*, No. 14-2-474-CIV-Goodman, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates that there is "no suggestion of fraud or collusion"); *In re WorldCom, Inc. ERISA Litig.*, No. 02-Civ-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (presence of mediator negates any suggestion of collusion).

<u>"The complexity, expense and duration of the litigation"</u> – In the event that this case was not settled, Plaintiff and the Class faced the prospect of a long and potentially expensive litigation. For one, given that this case was still at the motion to dismiss stage, if there is no settlement, the case would likely continue for another two to four years before a final, non-appealable judgment was reached.  The early settlement accomplished in this matter provides the Class with the opportunity to avoid that delay, and to obtain a recovery now.

Further, this matter would have likely included a meaningful amount of additional expense.  Indeed, if this matter continued through class certification, trial and appeal, it is likely that Class Counsel would incur over a million dollars in attorneys' fees and over a quarter of a million dollars in expenses (for experts, depositions and ESI).  *See* Ex. 4 (Rosenwasser Aff.) ¶ 5.

In addition, while Plaintiff believes that resolution of this case involves a straight-forward question of whether the form documents SunTrust provides in response to inquiries, requests for payoff figures and tenders of prepayment was approved by the FHA or HUD, SunTrust has endeavored to make this matter more complicated by raising a number of defenses, including, but not limited to, claiming that (i) Plaintiff is attempting to create a private cause of action to enforce HUD regulations; (ii) the HUD regulations are not incorporated into the uniform note; (iii) Plaintiff and each member of the Class must show that he or she would have changed the closing date if an approved form is provided; and (iv) the voluntary payment doctrine prevents some Class member claims.  While Plaintiff is confident she can defeat each of these defenses, they nonetheless created issues that Plaintiff would have to address and overcome.

<u>"The Stage of Proceedings at which the settlement was achieved and the amount of discovery completed"</u> – As stated above, the Settlement was achieved at an early stage in the litigation; *i.e.*, while SunTrust's motion to dismiss was pending.  This fact militates in favor of approving the Settlement for at least two reasons.  First, by settling early in the litigation, the Class avoids the

risk of losing the motion to dismiss, losing summary judgment or having Plaintiff's motion for class certification denied.  Second, an early settlement allows Class members to obtain recovery several years faster than they would if this case proceeded through trial and appeal.

With respect to the amount of discovery completed, although the Settlement occurred prior to the start of discovery, Plaintiff and Class Counsel were able to make an informed decision regarding the settlement amount.  Indeed, during the settlement negotiations, SunTrust provided to Class Counsel data reflecting the amount of post-payment interest it collected from April 2010 until June 2016, limited only by the statute of limitations applicable to each loan.  *See* Ex. 3 (HowleTrust Aff.) ¶¶ 4-10.  This constituted data for more than 70% of the Class, and allowed Class Counsel to extrapolate the damages for the time period that was not produced. Further, SunTrust represented in the Settlement Agreement and in an affidavit attached hereto (*see* Ex. 3), that the data it provided was complete and accurate (to the extent it existed in SunTrust's databases).  Thus, Plaintiff had more than sufficient information upon which to base her damages claim to negotiate a fair and reasonable settlement.

"The probability of plaintiffs' success on the merits" – Although Plaintiff strongly believes in the strength of her claims, given the early stage of this litigation, Plaintiff faced numerous hurdles before obtaining a final judgment.  Indeed, among other things, Plaintiff would still have to defeat SunTrust's motion to dismiss, move for and obtain class certification, defeat summary judgment (and any associated 23(f) appeal) and then succeed at trial.

"The range of possible recovery" – The proposed Settlement constitutes roughly 33% of the recovery Plaintiff and the class could recover in the event that they successfully litigated this action through trial and appeal.  *See* Ex.  3 (Howle Aff.) ¶ 11.  This percentage recovery is substantially higher than settlements that this and other courts have approved.  *See, e.g., In re*

*Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (approving class

settlement equal to **12-15%** of potential recovery); *In re Motorsports Merch. Antitrust Litig.*, 112

F. Supp. 2d 1329, 1335 (N.D. Ga. 2000) (approving class settlement of **less than 10%** of the

potential damages); *See, e.g., Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688,

698 (M.D. Fla. 2005) (approving settlement equal to **about 2%** of expert's damages calculation);

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21

(11th Cir. 1990) (approving settlement equal to **3 to 5%** of the per share recovery sought by

plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the

potential recovery does not mean the settlement is unfair or inadequate"); *In re Currency

Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving

settlement of antitrust and consumer protection claims by all defendants for "**roughly 10-15%**"

of the allegedly illegal fees collected from the class); *In re Linerboard Antitrust Litig.*, 296 F.

Supp. 2d 568, 581 & n.4 (E.D. Pa. 2003) (collecting cases approving antitrust settlements for low

fractions of potential recovery).  *see also In re Cendant Corp. Litig.,* 264 F.3d 201, 231 (3d

Cir.2001) (approving settlement of 36% of total damages and noting that typical recoveries in

complex securities class actions range from 1.6%-14% of estimated damages); *In re Aetna,* 2001

WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (approving settlement of approximately **10%** of total

damages of $830 million); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* 2005

WL 1213926, at *9 (E.D. Pa. May 19, 2005) (Recovery of **11.4%** of estimated single damages

"compares favorably with the settlements reached in other complex class action lawsuits.").

Indeed, courts have found that a settlement equal to "nine percent [of the estimated

damages] or higher constitutes a fair settlement."  *In re Checking Account Overdraft Litig.*, 830

F. Supp. 2d 1330 (S.D. Fla. Nov. 22, 2011).  *See also Behrens v. Wometco Enters., Inc.,* 118

F.R.D. 534, 542 (S.D.Fla.1988) (King, C.J.) ("A settlement can be satisfying even if it amounts

to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge*

*Networks Sec. Litig.,* 1998 WL 765724, *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures

roughly six to twelve percent of a potential recovery ... seems to be within the targeted range of

reasonableness"); *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706, 715 (E.D.Pa.2001) (noting

that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the

class members' estimated losses).

     The recovery here of 33% of the damages is particularly high given the very early stage

of the litigation that the settlement was reached.

<u>"The opinions of class counsel, the class representatives, and the substance and amount of</u>

<u>opposition to the settlement"</u> – As stated above, Class Counsel has extensive experienced

litigating class actions on both the plaintiff and defense side.  Class Counsel would not have

agreed to the settlement, and would not request approval from this Court, if they did not believe

that this settlement was fair, reasonable and adequate.  Indeed, it is Class Counsel's opinion that

the Class members' ability to recover 33% of their damages (before reduction for fees) provides

the Class with a substantial benefit given the very early stages of litigation, and the risks and

delays that the settlement avoids.  *See* Ex. 4 (Rosenwasser Aff.) ¶¶ 4-5.

**V.**    <u>**Plaintiff's Proposed Schedule for Settlement Approval**</u>

     Plaintiff has proposed a form of order that will address the schedule and course of

proceedings for settlement approval.  *See* Ex. A.  SunTrust has consented to entry of this order.

In sum, the order proposed by Plaintiff would place settlement approval on the following

schedule:

| Individual notice in the form of Exhibit 7 will be mailed to class members. | November 1, 2016 |
|---|---|
| Publication notice in the form of Exhibit 8 will be published in *USA Today* and *Wall Street Journal* | November 15, 2016 |
| Class Counsel will file motions (1) for reimbursement of expenses and for award of attorney fees and (2) for service award to the plaintiff | December 16, 2016 |
| Deadline to (1) request exclusion from the Settlement Class or (2) file objections to the settlements or to motion for reimbursement of expenses and for award of attorney fees or the service award | January 2, 2017 |
| Final Approval Hearing | February 2017 |

Plaintiff has attached forms of the publication notice and full mailed notice for the Court's review and approval as Exhibits - and - respectively.  SunTrust has consented to these forms of notice.

## **CONCLUSION**

For the reasons set forth above, plaintiff asks the Court to enter the proposed Order attached hereto as Exhibit 1.

**/s/ Steven Rosenwasser**
Steven Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA  30309
Tel: 404-881-4151
Fax: 404-881-4111

rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com

Kevin E. Epps
Ga. Bar No. 785511
Adam Hoipkemier
Ga. Bar No. 745811
Jeffrey W. DeLoach
Ga. Bar No. 081669
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Dr Ste 101, Bldg 200
Watkinsville, GA 30677
kevin@ehdlaw.com
jeff@ehdlaw.com
adam@ehdlaw.com

**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

I certify that, on September 1, 2016, I filed this **PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** with the Clerk of Court using the CM/ECF system, which will send e-mail notification to the opposing counsel of record:

Jeffrey W. Willis
Michael L. Eber
ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree St NE
Atlanta, GA 30303
jwillis@rh-law.com
meber@rh-law.com

**/s/ Steven Rosenwasser**

1465442.1