# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| SARAH FELIX, formerly known as SARAH M. ELLIS, individually and on behalf of a class,<br><br>        Plaintiff,<br><br>v.<br><br>SUNTRUST MORTGAGE, INC.,<br><br>        Defendant. | Civil Action No.<br>2:16-CV-00066-RWS<br><br>CLASS ACTION<br>JURY TRIAL |

## PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MEMORANDUM OF LAW IN SUPPORT

As the result of extensive due diligence, comprehensive legal analysis, and a well-drafted Complaint, Class Counsel[1] reached a settlement early in this action, which provides the class with substantial benefits without the years of delay that typically accompany class actions like this one.  As discussed below, Class Counsel has been able to achieve a settlement that requires SunTrust Mortgage, Inc. ("SunTrust") to pay millions of dollars to the class and to agree to a three-year injunction, without the risks and delays associated with SunTrust's motion to dismiss, opposition to class certification, summary judgment, a trial, and appeal. Through this motion, Class Counsel respectfully seeks to be compensated for the work they performed to provide the class with timely and substantial relief.

<u>ARGUMENT AND CITATION TO AUTHORITY</u>

**I.     Summary of the Law Governing Fee Applications**

It is well established that when a representative party has created a "common fund" for or has conferred a "substantial benefit" upon an identifiable class, its counsel is entitled to attorneys' fees based upon the benefit obtained.  *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir.

---

[1] "Class Counsel" herein refers to Bondurant, Mixson & Elmore, LLP and Epps, Holloway, DeLoach & Hoipkemier, LLC.  *See* Dkt. 36 at ¶ 10 (appointing class counsel).

1991); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).[2]

The "common fund" and "substantial benefit" doctrines are exceptions to the general rule that each party must bear its own litigation costs, and they serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989); *see also Ramey*, 508 F.2d at 1195; *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1139 (9th Cir. 1979). These concepts are based on the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478; *Mills*, 396 U.S. at 392.

---

[2] The criteria for application of the common fund doctrine are satisfied when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. In *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1199 (S.D. Fla. 2006), the court identified the following attributes of a "common fund" settlement: (1) the beneficiary class is sufficiently identifiable; (2) the benefits can be accurately traced to them; and (3) the fee can be shifted with some exactitude to those benefiting from the settlement. In this case, all of the elements of a "common fund" are present. In fact, a monetary settlement fund to be divided among the class is the most obvious type of common fund.

1507464.1

Courts also have recognized that appropriate awards of attorneys' fees in cases such as this encourage attorneys to seek redress for wrongs caused to entire classes of persons and discourage future misconduct of a similar nature:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce . . . laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *see also Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Pinto v. Princess Cruise Lines, Ltd.*, No. 05-23087, 2007 WL 853431, at *4 (S.D. Fla. Feb. 16, 2007); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 348-49.

Indeed, adequate compensation promotes the availability of plaintiff's counsel:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear. . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law.  It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit.  It is an experience in which few of us have participated.  The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1376 (D. Minn. 1985) (awarding requested 35% of common fund as fee).

1507464.1

3

The United States Supreme Court has consistently upheld the percentage-of-the-fund basis for making common fund fee awards. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Indeed, the Eleventh Circuit requires that attorneys' fees in common fund cases must be determined based upon this approach. *See Camden I*, 946 F.2d at 774.[3]

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* The Eleventh Circuit articulated various factors that it regards as "appropriately used" in determining the proper amount of the fee award, including:

(1)   the time invested;
(2)   the complexity and difficulty of the issues;
(3)   the skills required to produce the results obtained;
(4)   preclusion of other employment;
(5)   customary fees in similar circumstances;
(6)   the contingent nature of plaintiffs' counsel's fees;
(7)   time limitations imposed by the circumstances;
(8)   the amount involved and the results achieved;
(9)   the skills of the attorneys;
(10)  the undesirability of the action;

---

[3] In so ruling, the Eleventh Circuit rejected the "lodestar/multiplier" approach, which involves multiplying the number of hours expended by counsel by their hourly rates, and then adjusting that figure (the "lodestar") by a discretionary "multiplier" to reflect such factors as the riskiness of the particular litigation or the excellence of the result achieved. *Id.*

1507464.1

(11)   the nature and length of the professional relationships with the class
         representatives and members; and

(12)   awards in similar cases.

*See id.* at 772 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir.

1974), abrogated on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see*

*also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 688 (N.D. Ga. 2001).[4]

## II.   Class Counsels' Request for Attorneys' Fees Is Appropriate in This Case

As shown below, Class Counsel submits that their request for the Court's

approval of fees of 30% of the Settlement Fund is amply justified in light of the

*Johnson* factors.

<u>Time Involved Investigating and Pursuing the Claims</u>

Before filing the lawsuit, Class Counsel spent several months conducting

extensive due diligence to investigate, analyze, and develop the class claims.  *See*

Ex. A (Rosenwasser Decl.) ¶ 4; Ex. B (Ramachandrappa Decl.) ¶ 4; Ex. C

(Hoipkemier Decl.) ¶ 4; *see also, e.g.*, *Patrick Hetherington*, No. 3:13-CV-02152,

2016 WL 4374947, at *3 (D. Or. Aug. 12, 2016) (in approving fee, noting that class

---

[4] These factors are often referred to as the "*Johnson* factors."  The *Camden I* Court
also identified additional factors that may be considered when evaluating a
percentage fee award: the time required to reach the settlement, objections from the
class to "settlement terms or the fees requested," non-monetary benefits, the
"economics involved in prosecuting a class action," and other factors "unique to a
particular case."  *Camden I*, 946 F.2d at 775.  To the extent relevant here, these
factors are evaluated below.

counsel devoted substantial effort to pre-filing investigation); *In re Facebook, Inc. IPO Secs. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (one factor in determining fee is the "extensive investigation" into the matter); *Mills v. Capital One, N.A.*, No. 14-CV-1937, 2015 WL 5730008, at *15 (S.D.N.Y. Sept. 30, 2015) (noting that "investigation of plaintiffs' claims" was a factor warranting requested fee).  That due diligence included, but was not limited to, (i) reviewing the uniform notes underlying FHA-insured loans and documents relating thereto; (ii) analyzing HUD regulations; (iii) researching and analyzing case law relating to claims for breach of HUD regulations incorporated into contracts; and (iv) requesting, obtaining, and reviewing loan files.  *See* Ex. A ¶ 5; Ex. B ¶ 5; Ex. C ¶ 5.  Class Counsel undertook this extensive investigation, which took in excess of 75 hours without being paid an hourly rate; *i.e.*, Class Counsel fully assumed the risk that the investigation would not result in identifying a viable claim and, thus, Class Counsel would not be paid for their time.

After making the decision to move forward with litigation, Class Counsel incurred substantial time and expense preparing the Complaint, including reviewing the underlying documents, drafting the Complaint and conducting extensive legal research to ensure that the proper claims were brought.  *See* Ex. A ¶ 6; Ex. B ¶ 6;

Ex. C ¶ 6.  This included research on breach of contract and associated law not only in Georgia but nationwide (given that this is a nationwide class action).

After filing the lawsuit, Class Counsel incurred time and expense responding to SunTrust's motion to dismiss, which raised numerous grounds for dismissal. Preparing the response included, *inter alia*, researching responses to SunTrust's argument that Plaintiff was allegedly asserting a private cause of action to enforce HUD regulations, as well as SunTrust's voluntary payment and causation defenses. *See* Ex. A ¶ 7; Ex. B ¶ 7; Ex. C ¶ 7.

Finally, once the parties decided to try and settle this action through mediation, Class Counsel engaged in extensive work towards that goal.  For example, to ensure that a fair, reasonable, and adequate settlement was achieved, Class Counsel insisted that SunTrust provide it with detailed mortgagee data so that Class Counsel could, *inter alia*, determine the amount of post-payment interest that SunTrust collected.  *See* Ex. A ¶ 8; Ex. B ¶ 8; Ex. C ¶ 8.  That process involved negotiating with SunTrust and, once the data was produced, working with a consulting expert to read and analyze it.  *Id.*

Further, Class Counsel participated in a mediation and settlement of this class action, which involved over 120 hours collectively spent by Class Counsel preparing

for, attending the mediation, and then drafting the settlement documents.  *See* Ex. A

¶ 10; Ex. B ¶ 10; Ex. C ¶ 10.

Altogether, Class Counsel and their paralegal-related staff have spent over

410 hours investigating, researching, and litigating this case.  *See* Ex. A ¶ 11; Ex. B

¶ 11; Ex. C ¶ 11.

<u>Timing of the Settlement</u>

Class Counsel was able to obtain a settlement in this action a few months

after it was filed.  Thus, the Class will obtain their recovery ***years earlier*** than they

otherwise would have if this case proceeded through class certification, summary

judgment, trial, and appeal.  This militates in favor of a higher attorneys' fee award:

> All of the benefits the settlement confers upon the class as described above, and as more particularly described in this Court's companion memorandum opinion approving the settlement, are magnified by the fact that class counsel were able to achieve these results in a very short period of time.  From the time the complaint was filed in this lawsuit until the time notice of the proposed settlement was mailed to all class members, less than one year had passed.

> Had the case not been settled at this early stage, it is this Court's opinion that it would have been *at least* another year until trial. During that year, the expenses incurred by class counsel would have multiplied by several times due to the increased need for the taking of a substantial number of depositions, perhaps numbering as many as a hundred or more, and the need to hire numerous expert witnesses on several issues including accounting issues, class-wide damages, and expert testimony regarding the professional duties and responsibilities of attorneys.  Even if class counsel had prosecuted this case until its ultimate end in this court, it is likely that they would not have

1507464.1

achieved any result for the class for several years, and, even then, the final result may not have been as favorable to the class as the settlement heretofore approved by this Court.

*Mashburn*, 684 F. Supp. at 693.  Indeed, in *Asare v. Change Group N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013), the Court cited the fact that the case was settled "at an early stage of litigation" as a factor that "strongly supports" the attorneys' fee award requested in that case.  *See also Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (in determining the fee award, the Court noted that Class Counsel achieved an "excellent result for the Class in a highly efficient manner at an early stage of litigation").

Further, while Plaintiff strongly believes in her claims, by settling this case now, the Class avoided the risks associated with having the Court rule on SunTrust's motion to dismiss, as well as other pleadings SunTrust would inevitably file, including its opposition to Plaintiff's motion for class certification and a motion for summary judgment.  *See, e.g.*, *Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-3903, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."); *Brown v. Lowe's Cos., Inc.*, No. 5:13-CV-00079, 2016 WL 3457025, at *2 (W.D.N.C.

1507464.1

9

June 21, 2016) ("The settlement will avoid substantial additional costs to all parties as well as the delay and risks that would be presented by further prosecution of this litigation.").

The Novelty and Difficulty of the Issues Involved

While Class Counsel believe that the issues in this case are straightforward, this case is nonetheless a nationwide class action.  And, "[i]t is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("most class actions are inherently complex"); *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008) ("Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome.").

Moreover, despite the straightforward issues raised by Plaintiff's claims, SunTrust has endeavored to create complexity by raising a number of affirmative defenses, including, but not limited to, the voluntary payment doctrine and causation.  While Class Counsel can demonstrate that those defenses are without merit, Class Counsel was nonetheless required to engage in legal research and analysis to respond to those defenses.

1507464.1

<u>The Skill Required to Perform the Legal Services Properly</u>

Class Counsels' fees should also reflect the degree of experience, competence, and effort necessary to achieve the proposed settlement.  As recognized in *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities."  Those unique skills were called upon here.  The quality of Class Counsels' work on this case is ultimately reflected in the amount of the settlement before the Court.  From the outset, Class Counsel marshaled considerable resources and time in the research, investigation, and presentation of the facts and applicable law.  Class Counsel put together a case and were able settle with terms favorable to the Class without the extensive risks and delay typically associated with class actions.

Further, the Court should consider the quality of the opposition when assessing the quality of Class Counsels' representation.  *See, e.g.*, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *Johnson*, 488 F.2d at 718. SunTrust is represented by Rogers & Hardin, a prominent law firm with substantial resources and a zealous commitment to defeating Plaintiff and the putative class. This litigation and the settlement clearly demanded skilled and experienced Class Counsel.

1507464.1

11

<u>Preclusion of Other Employment and Time Limitations</u>

The *Johnson* Court held that a fee award should be increased if the attorney was precluded from accepting other employment due to the acceptance of the case. *See Johnson*, 488 F.2d at 718.  The *Johnson* Court observed that "[p]riority work that delays the lawyer's other legal work is entitled to some premium."  *Id.*

This case has required substantial attention from Class Counsel.  Indeed, even before the Complaint was filed, Class Counsel devoted over 75 hours of time conducting a factual and legal investigation to ensure that the claims were viable. *See* Ex. A ¶ 4; Ex. B ¶ 4; Ex. C ¶ 4.  Further, once the Complaint was filed, Class Counsel had to devote substantial attention to it given the short deadlines accompanying material pleadings, including SunTrust's motion to dismiss.  In short, while Class Counsel was investigating and litigating this case, they were not free to use their time for other purposes.

<u>The Customary Fee</u>

The "customary fee" in class action lawsuits is the "ordinary and customary market rates [charged to] fee-paying clients . . . in the relevant community." *Ressler*, 149 F.R.D. at 654 (citing *Blum*, 465 U.S. at 895); *see also Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988), *aff'd*, 899

F.2d 21 (11th Cir. 1990).  In a class action such as this one, the customary fee is a contingency fee, because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis.  *See Ressler*, 149 F.R.D. at 654; *see also Norman*, 836 F.2d at 1299.

A "one-third recovery . . . is a customary fee" for class actions.  *Diakos v. HSS Sys., LLC*, No. 14-61784, 2016 WL 3702698, at \*6 (S.D. Fla. Feb. 4, 2016). For that reason, a fee of 30% of the common fund—the amount Class Counsel seeks here—is consistent with, and even below, what numerous other courts have awarded in similarly complex class actions and is appropriate here.  *See also Morgan v. Public Storage*, No. 14-cv-21559-Ungaro [Dkt. 407] (S.D. Fla. Mar. 10, 2016) (awarding fees of 33% of settlement of \$5 million); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 [Dkt. 1557] (S.D. Fla. 2006) (awarding fees of 31 1/3 % of \$1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over \$30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of \$100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold [Dkt. 626] (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of

$77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).

Class Counsel also submit that, while not required under *Camden I*, an analysis of their lodestar in this case confirms that the requested fee is fair and reasonable.  Lodestar is calculated by multiplying the number of hours a lawyer has spent on a case by his hourly rate at the time of the fee petition.[5]  *See, e.g.*, *Camden I*, 946 F.2d at 772.  Here, the requested fee is roughly five times the total lodestar, well within (and in fact often below) what courts typically approve.[6]  *See,*

---

[5] In computing the lodestar, the rate applied is the hourly rate that is normally charged in the community where counsel practices, *i.e.*, the "market price."  *See, e.g.*, *Blum*, 465 U.S. at 895; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market rates — they provide an efficient and fair short-cut for determining the market rate'"); *Spencer v. Comserv Corp.*, No. 4-84-794, 1986 WL 15155, at *10 (D. Minn. Dec. 30, 1986) ("[c]ompensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 487 U.S.2d 161, 167 (3d Cir. 1973) ("*Lindy I*") ("The value of an attorney's time generally is reflected in his normal billing rate.").  It is counsels' current rates at the time of the fee award (rather than historical rates) that are the appropriate measure.  *See Missouri v. Jenkins*, 491 U.S. 274 (1989); *Johnson v. Univ. College of Univ. of Ala.*, 706 F.2d 1205, 1210-11 (11th Cir. 1983), *cert. denied*, 464 U.S. 994 (1983); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989); *Norman*, 836 F.2d at 1302; *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980) (*en banc*); *In re Union Carbide Corp. Consumer Prod. Business Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989).

[6] Counsel's lodestar figures represent work performed on the case from inception through December 7, 2016, one week before the date of this motion.  *See* Ex. A ¶ 12; Ex. B ¶ 12; Ex. C ¶ 12.  Paralegal and law clerk time should be included in the

*e.g.*, *In re R.J.R. Nabisco Sec. Litig.*, MDL No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *16 (S.D.N.Y. Aug. 24, 1992) (approving request for fees and expenses with a lodestar multiplier of **6.0**); *Muchnick v. First Fed. Sav. & Loan Assoc.*, No. 86-1104, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) (approving fee request with a lodestar multiplier of **8.0**); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving fee with a multiplier of **8.75**); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (approving attorney's fee award with a multiplier **of 5.5**); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (lodestar multiplier of **6.0**); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 734 n.44 (E.D. Pa. 2001) (fee award with lodestar multiple **between 4.5 and 8.5**); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (multiplier of **6.0**); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of **8.3**); *In Re IDB Communication Group, Inc. Sec. Litig.*, No. 94-3618 (C.D. Cal. Jan. 17, 1997) (multiplier of **6.2**); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24,

_____

lodestar calculation at market billing rates and should be adjusted using the risk multiplier, since such time is subject to the same contingent risks as attorney time. *See Missouri v. Jenkins*, 491 U.S. 274 (1989); *In re Union Carbide Corp. Consumer Prod. Business Sec. Litig.*, 724 F. Supp. at 163-64; *Sala v. Nat'l R. Passenger Corp.*, 128 F.R.D. 210, 216 (E.D. Pa. 1989).

1507464.1

15

2012) (granting attorneys' fees equal to **6.8** times lodestar); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (awarding multiplier of **8.74**); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding $11,250,000 fee, a multiple of **9.3** times lodestar and an average hourly rate of $2,779.63), *aff'd*, 66 F.3d 314 (3d Cir. 1995); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (a multiplier of **6.85** "falls well within the range of multipliers that courts have allowed.").

<u>Whether the Fee is Fixed or Contingent</u>

This action was prosecuted by Class Counsel on an entirely contingent-fee basis.  The Court should recognize that in undertaking to prosecute this complex action on that basis, counsel assumed a significant risk of nonpayment or underpayment.  Indeed, if Plaintiff were not successful in this action and litigated it just through class certification and summary judgment, Class Counsel would have no means of recovering the hundreds of thousands of dollars in attorneys' fees they would have incurred.  That risk warrants an appropriate fee.

Numerous cases recognize that the contingent-fee risk is an important factor in determining the fee award.  *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel *must* be compensated adequately for the risk of non-

payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the

attorney's contingent fee risk is an important factor in determining the fee award.");

*Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135

(11th Cir. 1986); *York v. Ala. State Bd. of Educ.*, 631 F. Supp. 78, 86 (M.D. Ala.

1986).

> In *Behrens*, 118 F.R.D. at 548, the court noted that:
>
> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.
> . . .
> A contingency fee arrangement often justifies an increase in the award of attorney's fees.  This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 548 (citations omitted).

Thus, the contingency risk in this case was substantial and militates in favor

of an award of the requested fee.[7]

---

[7] Courts have also made clear that if, by reason of their professional skill and determined efforts, plaintiffs' counsel are ultimately able to secure a settlement, that fact does not diminish the fact that they took an extreme risk at the time of filing. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (contingent multiplier "is designed to reflect the riskiness of the case at the outset."); *Skelton*, 860 F.2d at 258 ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."); *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*,

### The Amount Involved and the Results Obtained

"It is well-settled that one of the primary determinants of the quality of work performed is the result obtained." *Ressler*, 149 F.R.D. at 655; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976). Here, the Settlement provides a cash recovery of $3.5 million, which equates to roughly 33% of the total amount of damages the class suffered. This is a significant recovery, particularly given that it was obtained early on in the case. Indeed, courts have found that a settlement equal to just "nine percent [of the estimated damages] or higher constitutes a fair settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. Nov. 22, 2011). *See also Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, *2 (D.D.C. Oct. 22, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered

---

540 F.2d 102, 112 (3d Cir. 1976) ("*Lindy II*"). The relevant risks must be evaluated as of the time plaintiffs' counsel commenced the suit, not retroactively with the benefit of hindsight.

1507464.1

between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003).

The settlement also contains injunctive relief, requiring SunTrust to provide an approved form for at least three years.  Given that SunTrust was improperly collecting roughly $1 million a year in post-payment interest, Class Counsel estimates that the injunctive relief may be worth $2 million or more.

<u>The Expertise, Reputation, and Ability of the Attorneys</u>

As set forth in their previously filed declarations, Class Counsel are highly experienced in class actions such as this case.  *See* Dkts. 35-4, 35-5, 35-6.  They have been involved in many other precedent-setting and important cases and have furthered the rights of thousands or millions of class members by their efforts.  Their expertise and commitment to this litigation were essential in achieving the settlements that have been presented to the Court.

The Court should also consider the standing of Defendant's counsel, as it reflects on the challenges faced by Class Counsel.  *See Ressler*, 149 F.R.D. at 654. SunTrust was represented by Rogers & Hardin, an experienced law firm, which vigorously represented SunTrust's interests.  Given the expertise, reputation, resources, and ability of all of the attorneys associated with this litigation, this Court should grant Class Counsels' request for attorneys' fees.

1507464.1

<u>The Undesirability of the Action</u>

This Court recognizes the risk and difficulty inherent in class actions like this one.  Few firms would consider undertaking such representation, knowing that SunTrust would be represented by powerful counsel and that the case would require expenditure of hundreds or thousands of hours (on a contingent basis) and the advancement of hundreds of thousands or millions of dollars in out-of-pocket expenses.  The risk of failing to obtain any settlement or judgment, combined with the deferral of fees and the need to advance tremendous expenses, would deter most firms.  Plaintiffs' counsels' willingness to assume those risks should be reflected in the fee.

<u>The Relationship with Class Representatives and Class Members</u>

Regarding this factor, the *Johnson* court wrote that "[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office."  488 F.2d at 719.  The class representatives in this case did not have professional relationships with counsel before this matter, so there is no expectation that a pre-existing relationship might warrant a reduced fee:

> Petitioners had not represented the named class plaintiff before he approached [one of Plaintiffs' Co-Lead Counsel] to ask it to undertake an investigation into the underlying facts and circumstances of this lawsuit.   Thus, to the extent this factor may have independent

significance in the context of a class action, it militates in favor of the 30% fee award sought here because plaintiff did not have a "track record" with the law firms that agreed to prosecute this action on his behalf.

*Ressler*, 149 F.R.D. at 655.

This factor thus also weighs in favor of the requested fee. This is not a situation such as a defendant's attorney might face in which discounted fees are given or extra risks assumed because the attorney knows that he will benefit from repeat business with that client. *See Braun v. Culp, Inc.*, No. C-84-455-G, 1985 WL 5857, at *4 (M.D.N.C. 1985) ("There is little likelihood that plaintiff's counsel will be sought after to do legal work for members of the plaintiff class. . . . The attorneys' relationship with the class members is thus not analogous to one in which a lawyer may 'discount' certain work to a client because of the likelihood of a continuing profitable association.").

<u>Awards in Similar Cases</u>

Although there is no set rule governing what constitutes a reasonable fee, a review of common-fund cases confirms that district courts in the Eleventh Circuit and others have awarded percentages within the range of this request. Awards are often higher. *See Waters*, 190 F.3d at 1292-98 (affirming award of 33-1/3% attorneys' fee on $40 million common fund); *Morgan v. Public Storage*, No. 14-cv-21559-Ungaro [Dkt. 407] (S.D. Fla. Mar. 10, 2016) (awarding 33%); *Allapattah*

*Servs., Inc. et al.*, 454 F. Supp. 2d at 1199 (awarding 31-1/3%); *Grier v. Chase*

*Manhattan Auto. Fin. Co.*, No. 99-180, 2000 WL 175126, at \*16 (E.D. Pa. Feb. 16,

2000) (awarding fee of 33.33% of the net settlement fund); *Ratner v. Bennett*,

No. 92-4701, 1996 WL 243645 (E.D. Pa. May 8, 1996) (approving award of 35% of

the settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y.

1993) (awarding 33.85% of settlement fund).  Given the complexity, burden and

risk associated with this case, the requested fee of 30% is well in line with the case

law.

## III.    Reimbursement of Class Counsels' Expenses Is Appropriate in This Case

It is appropriate to award of out-of-pocket expenses to counsel whose efforts

created substantial benefit for the class.  *See, e.g.*, *Camden I*, 946 F.2d at 771; *In re*

*Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 348.

Class Counsel have applied for reimbursement of expenses that they incurred

in prosecuting the litigation in the total amount of **$10,283.16**, which includes

amounts incurred through December 7, 2016, which is one week before the filing of

this motion.  *See* Ex. A ¶ 14; Ex. B ¶ 13; Ex. C ¶ 13.  These amounts were

reasonably and necessarily incurred in connection with this case for filing fees; legal

research; consulting experts; the mediation; and other customary expenditures.  *Id.*

As set forth in the accompanying declarations (Exhibits A-C), these expenses and other expenses were reasonable and necessary to prosecute the case and obtain the Settlement, and they are reflected in the books and records of Class Counsels' firms.

## <u>CONCLUSION</u>

Class Counsel respectfully submit that, under the relevant criteria, their application for attorneys' fees and reimbursement of out-of-pocket expenses is reasonable and should be approved.

Respectfully submitted this 16th day of December 2016.

*/s/ Steven Rosenwasser*
Steven Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
**BONDURANT, MIXSON & ELMORE, LLP**
1201 W Peachtree St NW Ste 3900
Atlanta, GA  30309
Tel: 404-881-4151
Fax: 404-881-4111
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com

Kevin E. Epps
Ga. Bar No. 785511
Adam Hoipkemier
Ga. Bar No. 745811
Jeffrey W. DeLoach
Ga. Bar No. 081669

1507464.1

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**
1220 Langford Dr Ste 101, Bldg 200
Watkinsville, GA 30677
kevin@ehdlaw.com
jeff@ehdlaw.com
adam@ehdlaw.com

**Attorneys for Plaintiff**

1507464.1

24

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel certifies the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rule 5.1(c) and 7.1(D).

This 16th day of December, 2016.

*/s/ Steven Rosenwasser*
Steven Rosenwasser

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing **PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MEMORANDUM OF LAW IN SUPPORT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically serve notification of such filing to all counsel of record as follows:

> Jeffrey Wright Willis, Esq.
> Rogers & Hardin, LLP
> 229 Peachtree Street, N.E.
> 2700 International Tower, Peachtree Center
> Atlanta, Georgia  30303-1601
> Email: jww@rh-law.com
>
> Michael L. Eber, Esq.
> Rogers & Hardin, LLP
> 229 Peachtree Street, N.E.
> 2700 International Tower, Peachtree Center
> Atlanta, Georgia  30303-1601
> Email: meber@rh-law.com

This 16th day of December, 2016.

> */s/ Steven Rosenwasser*
> Steven Rosenwasser

1507464.1

26