# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

SARAH FELIX, formerly known as      :
SARAH M. ELLIS, individually and on    :
behalf of a class,                    :
                                  :
       Plaintiff,                 :
                                  :    Civil Action File No.
v.                                   :    2:16-CV-00066-RWS
                                  :
SUNTRUST MORTGAGE, INC.,      :    CLASS ACTION
                                  :    JURY TRIAL
       Defendant.            :
_____ :

# PLAINTIFF'S MOTION AND
# INCORPORATED MEMORANDUM IN SUPPORT OF
# FINAL APPROVAL OF CLASS ACTION SETTLEMENT

By Order of September 9, 2016, this Court preliminarily approved the settlement of the class claims alleged in this action. *See* Order of September 9, 2016 ("Preliminary Approval Order") [Dkt. 36]. Under this settlement, Defendant SunTrust Mortgage, Inc. ("SunTrust") will, *inter alia*, pay $3.5 million to compensate class members and agree to provide certain required disclosures in response to inquiries, requests for payoff information, or tenders of prepayment.[1]

---

[1]     A copy of the proposed settlement agreement has been filed with the Court as an exhibit to the Motion for Preliminary Approval. *See* Dkt. 35-2. It is referred to herein as the "Settlement."

The Court's Preliminary Approval Order also established deadlines for submission of additional materials in support of the Settlement, and set a hearing for final approval on February 6, 2017.  Preliminary Approval Order [Dkt. 36] at 6-7.  In accordance with that schedule, on December 16, 2016, Plaintiff filed her Application for Class Representative Service Award [Dkt. 40] and Motion for Attorney Fees and Reimbursement of Expenses [Dkt. 41], and Plaintiff now submits this motion for final approval.

Significantly, the response to the Settlement has been overwhelmingly positive.  Of the over 44,000 class members, **there were only 10 timely opt-outs** (approximately 0.0002% of the Class).  *See* Exhibit 1, Declaration of Karen Rogan (Rogan Decl.), ¶ 9.  And **not a single class member filed an objection** to the Settlement.  *Id.* at ¶ 10.  In addition, none of the federal or state governmental agencies notified of the Settlement pursuant to 28 U.S.C. § 1715 has asserted any objection.  *Id.* at ¶ 3.  And, to date, no objections have been filed with the Court regarding the Plaintiff's Application for Class Representative Service Award or Motion for Attorney Fees and Reimbursement of Expenses.

Plaintiff Sarah Felix respectfully submits this motion and memorandum in support of final approval of the Settlement reached in this class action.  For the reasons set forth herein and in the papers previously submitted, the Settlement is

fair, adequate, and reasonable and is in the best interests of the class.  Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement by: (1) determining that adequate notice was provided to the class; (2) approving the proposed Settlement as fair, adequate, and reasonable for the certified class; (3) granting the requested attorneys' fees, costs, and incentive award; and (4) entering the proposed Final Approval Order attached as Exhibit 2.

I.   **REPORT ON MAILED NOTICE, PUBLICATION NOTICE AND THE SETTLEMENT WEBSITE AND THE RESPONSE OF THE CLASS.**

As an initial matter, Plaintiff provides the Court with the following update regarding events that have occurred since the Court's Preliminary Approval Order, [Dkt. 36].  Specifically, the administrator has provided notice of the proposed Settlement to the class members in the form and manner approved by the Court, and the administrator has received only ten (10) opt outs and no objections.

A.   *Appointment of the Settlement Administrator*

In its Preliminary Approval Order, the Court directed the Parties to identify the entity that they request to serve as the Settlement administrator for this case. Preliminary Approval Order [Dkt. 36] at 7.  The Parties proposed Kurtzman Carson Consultants, LLC ("KCC"), which has extensive experience administering nationwide class-action settlements.  *See* Dkt. 37.  KCC was approved by the Court

to act as Settlement administrator on September 13, 2016.  *See* Order [Dkt. 38].

### B.     Notice to the Class

The motion for preliminary approval proposed a process for notifying the class of the Settlement.  *See* Dkt. 35.  In its Preliminary Approval Order, the Court evaluated the proposal and determined that "[t]he form and content of the Mailed Notice and the Publication Notice, and the method set forth herein of notifying members of the class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." Preliminary Approval Order [Dkt. 36] at 8.  Thus, this Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto.  *See id.*

Since the Preliminary Approval Order, this notice program has been fully implemented by independent Settlement administrator KCC.  *See* Exhibit 1, Rogan Decl. at ¶¶ 2-8.  After receiving the class-member list compiled from SunTrust's records, KCC ran the last-known addresses in SunTrust's data against the National Change of Address database for increased accuracy.  *See id.* at ¶ 4.  On November 1, 2016, KCC mailed the Court-approved class notice to each of the 44,194 addresses associated with the Class.  *See id.* at ¶¶ 4-5.  Mailings that were returned

1524163.1

undeliverable were sent to any forwarding address provided by the Post Office or that could be determined through other credit or public source databases. *See id.* at ¶ 6.

In addition to mailing notice to class members, KCC also published a version of the notice approved by the Court for publication. This notice was published in the *Wall Street Journal* and the *USA Today* for three consecutive days starting November 8, 2016. *See id.* at ¶ 7.

KCC also created and maintained a website at www.FelixMortgageSettlement.com. *See id.* at ¶ 8. The website describes the Settlement as well as the rights of Settlement class members to participate, to exclude themselves from the Settlement class and to object to the Settlement. *See id.* The website includes a copy of the full notice mailed to Settlement class members, the Complaint, the Settlement Agreement itself, the Preliminary Approval Order, answers to various frequently asked questions and other information regarding the Settlement. *See id.*

The mailed and publication class notices informed the class of, among other things: (1) information about this case, the Settlement, and the release; (2) deadlines for class members to opt out, or to object to the Settlement; (3) the date by which a motion for attorneys' fees and costs and a motion proposed incentive award for Plaintiff must be filed with the Court; and (4) the date and location of the

Fairness Hearing.  *See id.* at Exhibits B & C.  In addition, the notices and the

website inform Settlement class members that Plaintiff's motion for an award of

attorney's fees and reimbursement of expenses would be available from the

PACER website, the Court, or Class Counsel after December 16, 2016.[2]

Thus, the notice program approved by this Court has been fully implemented

by KCC.  It has successfully provided notice of these proceedings and of the

matters set forth therein, including the Settlement, to all parties entitled to such

notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### C.      *Requests for Exclusion and Objections*

Pursuant to the Court's Preliminary Approval Order and as repeated in the

mail and publication notices and on the Settlement website, the deadline for class

members to request exclusion from the class Settlement or to object to the

Settlement was January 2, 2017.  *See* Preliminary Approval Order [Dkt. 36] at

9-10.  No Settlement class members objected to the Settlement.  *See* Exhibit 1,

Rogan Decl. at ¶ 10.  And only ten Settlement class members opted out of the

Settlement.  *See id*. at ¶ 9.  Further, no Settlement class member has filed an

objection to Plaintiff's motion for an award of attorney fees and reimbursement of

---

[2]      Additionally, SunTrust used KCC to provide notice of the Settlement to federal and state officials, pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2).  *See* Exhibit 1, Rogan Decl. ¶ 3.

1524163.1

expenses or the Plaintiff's motion for a service award to the class representative.

## II.   FINAL APPROVAL OF THE CLASS SETTLEMENT IS APPROPRIATE.

### A.   *Standards for Approving Class Action Settlements*

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of a class settlement.  A district court evaluates a proposed class-action settlement to determine if it "is fair, adequate and reasonable and is not the product of collusion between the parties."  *Bennett v. Behring* Corp., 737 F.2d 982, 986 (11th Cir. 1984); *see* also Fed. R. Civ. P. 23(e)(2).

A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation."  Manual for Complex Litig. (4th) § 21.61 (2010).  In determining whether a class settlement is fair, adequate and reasonable, courts of this Circuit have considered factors such as "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."  *Bennett*, 737 F.2d at 986.

Significantly, the court evaluates these so-called *Bennett* factors in light of

"the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *See id.*; *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); "Class-action settlements [are] disapproved only upon 'considerable circumspection.'" *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (quoting *Jamison v. Butcher & Sherrerd,* 68 F.R.D. 479, 481 (E.D. Pa. 1975)).

This means that, "in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case in the settlement hearings." *Cotton*, 559 F.2d at 1330. As appellate courts have cautioned: "It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Id*. "Neither should it be forgotten that compromise is the essence of a settlement." *Id*. In deciding whether to grant final approval, a court should not require the parties to "'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest

hopes.'" *Id.* (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972)). Moreover, "[i]n performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton*, 559 F.2d at 1330 (citation omitted).

> **B.     The Settlement Is the Result of Informed, Arm's Length Negotiations Absent Collusion.**

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  4 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002); *accord In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).  The Settlement satisfies this test.

To reach this Settlement, the Parties engaged in extensive arm's-length negotiations, which included the assistance of an experienced, independent, third-party mediator, Ralph Levy.  Courts have consistently held that the involvement of a mediator belies any suggestion of fraud or collusion.  *See*, *e.g.*, *Montoya v. PNC Bank, N.A.*, No. 14-2-474-CIV-Goodman, 2016 WL 15 29902, at *8 (S.D. Fla. Apt. 13, 2016) (citing use of mediator as indication that there is "no suggestion of fraud or collusion");  *In re World Com, Inc. ERISA Litig.*, No. 02-CIV-4816, 2004

WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (presence of mediator negates any suggestion of collusion).

The Parties' settlement discussions culminated in an Agreement that provides substantial relief to the class.  Under the Settlement, Defendant SunTrust agreed to create a cash settlement fund of $3,500,000.00, which will be distributed to class members after payment of class counsel's attorneys' fees and costs and approved class representative service award. Dkt. 35-2 at 5-8 (Settlement Agreement, §III(B)-(D)).  As explained in the motions filed by the Plaintiff on December 16, 2016, the class representative service award and the award of attorney fees and costs that the Plaintiff has requested the Court to authorize are appropriate in this case and comparable to such awards in other class actions.  *See generally* Application For Class Representative Service Award [Dkt. 40] & Motion for Attorney Fees and Reimbursement of Expenses [Dkt. 41].  Significantly, no one has objected to these motions or to the Settlement as a whole.

The Settlement is also the result of a thorough investigation.  Although the Settlement occurred prior to the start of discovery, Plaintiff and class counsel were able to make an informed decision regarding the Settlement amount.  During the negotiations, SunTrust provided to class counsel data reflecting the amount of post-payment interest that it collected from April 2010 until June 2016, limited

1524163.1

only by the statute of limitations applicable to each loan.  *See* Dkt. 35-3,

¶¶ 4-10.  This constituted data for more than 70% of the class and allowed class

counsel to extrapolate the damages for the remaining time period.  SunTrust has

provided a sworn statement that the data it provided is complete and accurate (to

the extent that it existed in SunTrust's databases).  *See id*.  This information

permitted Plaintiff to effectively negotiate on behalf of the class and ultimately

achieve the exemplary Settlement for which approval is now sought.

Last, the Parties are represented by highly competent counsel who have

years of experience litigating and settling complex class actions.  *See generally*

Dkt. 41.  For the foregoing reasons, there is no evidence of collusion; the

Settlement is the result of arms-length, informed negotiations between experienced

counsel.  Therefore, the Settlement is entitled to a presumption of fairness.

### C.    *The Settlement is Fair, Reasonable and Adequate.*

In assessing the fairness, reasonableness, and adequacy of a settlement,

courts view the facts in the light most favorable to the settlement.  *Isby v. Bayh*, 75

F.3d 1191, 1199 (7th Cir. 1996); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d

489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of

class action lawsuits.") (citation omitted); *In re Checking Account Overdraft Litig.*,

830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) ("'Settlement agreements are highly

1524163.1

favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'") (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

Applying the *Bennett* factors cited *supra* at 7-8 to this case, the relevant criteria support final approval of the Settlement.

### 1.    *Likelihood of Success at Trial*

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial.  Here, SunTrust has vigorously defended its position throughout the litigation and negotiation process, and has expressed every intention of continuing a spirited defense, absent settlement, through class certification, summary judgment, and trial.  As such, Plaintiff's success at trial is in no way guaranteed, supporting final approval of the Settlement.

Although Plaintiff has thoroughly investigated the factual and legal bases for her claims and has developed substantial evidence supporting her allegations, one cannot ignore the risks of continuing the litigation had settlement not occurred.

For SunTrust's part, it has steadfastly denied that it has any liability and has indicated its intention to assert multiple defenses against Plaintiff's allegations,

including attacks on the substance of Plaintiff's claims and attacks on the

Plaintiff's ability to pursue this action on behalf of a class.  *See generally,*

Defendant's Motion to Dismiss [Dkt. 16]; Joint Preliminary Report and Discovery

Plan [Dkt. 22].

If, for example, SunTrust were able to present convincing facts to support its

position that a nationwide class is inappropriate, the Court could have refused to

certify a class, leaving Plaintiff with the ability to pursue her claims only on an

individual basis.  Instead, settlement allows the class to avoid the inherent risk,

complexity, time, and cost associated with continued litigation.  *See United States*

*v. City of Miami*, 664 F.2d 435, 439 (5th Cir. 1981) ("[C]ompromise and

settlement not only save the time, expense, and psychological toll but also avert the

inevitable risk of litigation.") (quoting *United States v. Armour & Co.*, 402 U.S.

673, 681 (1971)).

In approving class settlements, courts recognize that there is a material

substantial risk of losing inherent in any jury trial.  And even if Plaintiff prevailed

at trial, Defendant would almost certainly appeal, threatening a reversal of any

favorable outcome and causing significant delays in obtaining any relief for class

members.  Under the Settlement, class members avoid all of the risks and obstacles

to recovery and will receive substantial benefits in a timely fashion.

1524163.1

Plaintiff and Class Counsel have negotiated an excellent settlement for the class that includes injunctive relief and requires SunTrust to pay Settlement Benefits of $3.5 million.  *See* Dkt. 35-2, §§ II & III(B)(1).  Class members can recover a portion of the Settlement Benefits after Settlement Administration Costs, Court-approved attorneys' fees and costs for Class Counsel, and any Court-approved Class Representative Award.  *See id.* at §§ III(C) & (D).

In light of the risks outlined above combined with the fact that Plaintiff and class members faced lengthy, protracted, and expensive litigation had they not settled, this is a fair settlement that requires prompt payments to class members. The Settlement should be approved.

## 2. *Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate*

The second and third *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are often analyzed together.  *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007).  However, "the Court is not confined to the mechanistic process of comparing the settlement to the estimated recovery times a multiplier derived from the likelihood of prevailing on the merits.'"  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323 (quoting *In re Corrugated*

1524163.1

14

*Container Antitrust Litig.*, 643 F.2d 195, 217 (5th Cir. 1981)). "[T]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 ("That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair. 'In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'") (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974)).

Here, the Settlement constitutes roughly 33% of the recovery that Plaintiff and the class could recover in the event that they successfully litigate this action through trial and appeal. Compare Dkt. 35-3, ¶ 11 (total post-payment interest collected by SunTrust is $10.35 million) with Dkt. 35-2 (Settlement Agreement provides for settlement fund of $3.5 million). Although the Settlement does not provide class members 100% of the amount that they could potentially receive if they sued on their own and prevailed, the "fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. This is because a settlement must be evaluated "in light of the

attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1350 (citation omitted).

A thirty-three percent recovery is substantially higher than settlements that this and other courts have approved. *See e.g. In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 325 (approving class settlement equal to 12-15% of potential recovery); *see also Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to about 2% of expert's damages calculation); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *In re Currency Conversion Fee Antitrust Litig.*, No. 01MDL1409, M-21-95, 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement for "roughly 10-15%" of the allegedly illegal fees collected from the class); *In re Aetna*, No. Civ. A. MDL 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan. 4, 2001) (approving settlement of approximately 10% of total damages of $830 million); *Stop & Shop Supermarket Co. v. SmithKlineBeecham Corp.*, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (recovering 11.4% of estimated damages "compares favorably with the settlements

reached in other complex class action lawsuits."). Indeed, courts have found that a settlement equal to "nine percent [of the estimated damages] or higher constitutes a fair settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346. *See also Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses). The settlement of this class action compares favorably with those described above. Therefore, these *Bennett* factors support approval of the Settlement.

### 3.   *Complexity, Expense, and Duration of Litigation*

The next *Bennett* factor is the complexity, expense, and duration of litigation. As the Eleventh Circuit has noted, "settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543. In evaluating this *Bennett* factor, courts "'should consider the vagaries of litigation and compare the significance of immediate recovery by way of the

compromise to the mere probability of relief in the future, after protracted and expensive litigation.'" *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d at 1333 ("Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law.") (citations and quotations omitted).  This factor weighs in favor of approval.

In the absence of the Settlement, it is certain that the expense, duration, and complexity of protracted litigation would be substantial.  Aside from the substantive, adversarial discovery (and related motion practice) that the Parties would have needed to pursue absent settlement, the Parties have yet to file and brief motions for class certification and summary judgment, which would have comprised major investments of time, energy, and capital in the form of expert witness fees, for both sides.  Additionally, if the Court were to grant class certification or summary judgment in either side's favor, given the amount at issue, the losing side would likely seek relief from the Eleventh Circuit.  *See, e.g.*, Fed. R. Civ. P. 23(f).  In either case, continued litigation of this matter would delay its resolution and inflict unnecessary additional expense on both sides.  Where unnecessary additional costs and delay are likely to be incurred absent a settlement,

1524163.1

"'it [is] proper to take the bird in the hand instead of a prospective flock in the bush.'"  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 326 (quoting *Oppenlander*, 64 F.R.D. at 624).  The complexity, expense, and duration of litigation thus weigh in favor of approving the Settlement.

### 4.     *Substance and Amount of Opposition to Settlement*

The next *Bennett* factor is the substance and amount of opposition to the settlement.  Here, as set forth in detail in Section, I(C), *supra*, out of over 40,000 Class Members, just ten opted out of the Settlement, and none objected.  This is strong circumstantial evidence that the Settlement is fair, especially because class settlements are often approved even over the objections of class members.  *See Cotton*, 559 F.2d at 1331 ("A settlement can be fair notwithstanding a large number of class members who oppose it[,]" citing *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974), in which more than 20% of the class objected).  But here, the absence of a single objection strongly signals the fairness of the Settlement.

Moreover, while notice of the Settlement was sent to State and Federal officials pursuant to 28 U.S.C. § 1715, none has voiced any opposition to the terms of the Agreement.  *See* Exhibit 1, Rogan Decl. ¶ 3.  This lack of governmental opposition to the Settlement likewise militates in favor of its approval.  *See Fresco*

*v. Auto. Directions, Inc.*, No. 03-61063, 2009 WL 9054828, at *5 (S.D. Fla. Jan. 20, 2009) (noting, in addressing this *Bennett* factor and approving settlement, that "[n]o state or federal government officials have filed objections"). The opposition to the Settlement is miniscule and thus weighs in favor of final approval.

### 5.   Stage of Proceedings at which Settlement Was Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. Courts look at this factor "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007). However, substantial formal discovery is not required, especially where the necessary information was gleaned informally without the wasted time and expense of written discovery requests, deposition testimony, and associated motion practice. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211 ("[T]he trial court may legitimately presume that counsel's judgment that they had achieved the desired quantum of information necessary to achieve a settlement is reliable.") (citation and quotations omitted); *accord Cotton*, 559 F.2d at 1332.

Here, the Settlement was reached only after the Parties had engaged in significant informal discovery about the size of the putative class, range of

damages, and the contrasting strengths of the Parties' claims and defenses.  *See, e.g.*, Dkt. 35-3, ¶¶ 4-10).  Hence, there should be no question that, by the time the Settlement was reached, Plaintiff had enough information to sufficiently evaluate the strength of the claims of the class and weigh the benefits of settlement against continued litigation.  The thorough investigation and evaluation of Plaintiff's legal claims, extensive informal discovery, and numerous arm's-length negotiations— including before a third-party mediator—favor final approval of the Settlement.

### 6.   The Opinion of Counsel

"Courts often accord great weight to the opinions of counsel for the class in approving class action settlements."  *Meyer v. Citizens & S. Nat'l Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) (citing *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983)).  In fact, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties . . . [and], absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton*, 559 F.2d at 1330 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).  Here, Class Counsel—with substantial experience in class action litigation and with the benefit of sufficient information from the Defendant—believe that the Settlement is fair, reasonable, adequate, and in the

best interest of the Settlement Class as a whole.  *See* Dkt. 35-4, ¶¶ 4-5.  This factor, therefore, further supports approval of the Settlement.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the Settlement and enter the proposed Final Approval Order attached hereto as Exhibit 2.

Dated:  January 13, 2017          Respectfully submitted,

SARAH FELIX, on behalf of herself
and all others similarly situated

By:  */s/ Steven J. Rosenwasser*
Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW Ste 3900
Atlanta, Georgia  30309
404-881-4151
*rosenwasser@bmelaw.com*
*ramachandrappa@bmelaw.com*

Kevin E. Epps
G. Bar No. 785511
Adam Hoipkemier
Ga. Bar No. 745811
Jeffrey W. DeLoach
Ga. Bar No. 081669
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive, Suite 101, Bldg. 200
Watkinsville, Georgia  30677
*kevin@ehdlaw.com*
*jeff@ehdlaw.com*
*adam@ehdlaw.com*

*Counsel for Plaintiff and the Class*

## **L.R. 7.1(D) CERTIFICATION**

I hereby certify that this filing has been prepared with one of the font and point selections approved by the Court in L.R. 5.1(C)—in this case, Times New Roman, 14-point font.

/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Ga. Bar No. 614908

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following counsel of record:

Jeffrey W. Willis
Michael L. Eber
Rogers & Hardin LLP
2700 International Tower
229 Peachtree Street, NE
Atlanta, Georgia  30303
jwillis@rh-law.com
meber@rh-law.com

/s/ Steven J. Rosenwasser
Steven J. Rosenwasser
Ga. Bar No. 614908

1524163.1

24