Fulton County Superior Court
***EFILED***BR
Date: 3/24/2017 12:24:33 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| Adam L. Hoipkemier, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | File No.   2017CV287880 |
| | ) | |
| Werner & Associates, P.C. d/b/a | ) | |
| The Werner Law Firm, PC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

### VERIFIED COMPLAINT

Plaintiff Adam L. Hoipkemier files this Verified Complaint against Defendant Werner & Associates, P.C. d/b/a The Werner Law Firm, PC (the "Werner Firm" or the "firm"), showing as follows:

### SUMMARY OF THE CASE

1.

This is an attorney fee-sharing dispute. The Werner Firm agreed to pay Hoipkemier a percentage of the fees received by the firm in certain cases. The Werner Firm has refused to pay Hoipkemier approximately $110,000 in fee-sharing compensation in violation of the parties' agreement on two cases on which payment has been received (known as *Thompson* and *Bain*). The Werner Firm also refuses to acknowledge that Hoipkemier is entitled to forty percent (40%) of any fees due to the firm in two court-approved class action settlements (known as *Felix* and *Dorado*) and fifty percent of the fees in another case (known as *Oak Park*). In addition to unpaid compensation, Hoipkemier seeks a declaratory judgment affirming his right to a share of the fees earned by the firm in these cases according to the parties' agreement.

EXHIBIT 2

## PARTIES

### 2.

Hoipkemier is a Georgia citizen and licensed attorney in good standing with the State Bar of Georgia.

### 3.

Werner & Associates, P.C. d/b/a The Werner Law Firm, PC is an Atlanta, Georgia-based law firm that can be served with process on its registered agent Michael Werner at 2860 Piedmont Road, Atlanta, Georgia 30305.

## VENUE AND JURISDICTION

### 4.

The Werner Firm is subject to venue and jurisdiction in this Court because the firm is a Georgia citizen and its registered agent and principle office are located in Fulton County.

## FACTUAL BACKGROUND

### The Employment Agreement & The Firm

### 5.

Hoipkemier was employed as an attorney with the Werner Firm from November 2014 until June 27, 2016.

### 6.

Prior to Hoipkemier beginning work with the firm, the firm and Hoipkemier agreed that Hoipkemier's compensation would consist of a $5,000/month base salary, plus a percentage share of the fees received by the firm on certain cases.

### 7.

The agreement is commemorated in a September 25, 2014 e-mail chain between Hoipkemier and Michael Werner (the "Employment Agreement"):[1]

---

[1] A true and correct copy of the September 25, 2014 e-mail chain is attached as Exhibit A.

EXHIBIT 2

10:06 a.m. e-mail from Hoipkemier:

"To confirm we are on the same page on compensation, I understand that it is $5,000/month (do you pay salary bi-weekly or monthly?) and then **a split of 50/50 of the fees of any cases I bring with me to the firm, 40/60 on cases that I originate,** and 20/80 on cases that you bring in and give to me to run with."

10:09 a.m. e-mail response from Michael Werner:

"...**yes, your outline of the pay is correct.**"

8.

Other than the *Thompson* case discussed below (which involved a modification to the Employment Agreement), Hoipkemier originated all of the cases at issue.

9.

Hoipkemier received fee-sharing compensation according to the terms of the Employment Agreement throughout his employment with the firm. That is, the Werner Firm paid Hoipkemier 20% or 40% of the fees received by the firm depending on case origination.

10.

The Werner Firm is a plaintiff's personal injury firm and Michael Werner specializes in truck, car, and motorcycle wrecks. See http://wernerlaw.com/attorneys/michael-werner/ (last visited March 23, 2017) ("Werner specializes in cases that deals with catastrophic injuries, whether they were due to tractor trailer, motorcycle or car wrecks.").

11.

Werner did not handle class actions as any significant part of his practice prior to or during Hoipkemier's employment with the firm. Upon information and belief, Michael Werner and the Werner Firm had never been counsel of record in a class action until Hoipkemier joined the firm. *Id.* (Case Results Page – listing personal injury cases; Practice Areas Page – listing different types of personal injury practices, but not class actions).

KH415190.DOCX

— 3 —

**EXHIBIT 2**

12.

Building on his prior experience defending class actions and other complex commercial litigation cases, Hoipkemier developed a plaintiff's class action practice at the firm, originating and successfully resolving several class action cases.

13.

Hoipkemier performed all or substantially all of the legal work on the class action cases he originated.

14.

With respect to the *Felix* and *Dorado* cases discussed below, Michael Werner performed no substantive legal work in the cases, such as drafting pleadings or discovery, developing legal strategies, legal research, etc.

15.

Hoipkemier left the Werner Firm on June 27, 2016 for a partnership with a new law firm, Epps, Holloway, DeLoach & Hoipkemier, LLC.

Unpaid Compensation I: The *Thompson* Case

16.

In the fall or winter of 2015, Michael Werner assigned to Hoipkemier a case involving the collection of a default judgment for Larry Thompson, individually and as Executor of the Estate of Phyllis Thompson, in a wrongful death case arising out of a motor vehicle wreck with a Canadian citizen (the "*Thompson* case").

17.

Collection of the judgment was unlikely at that time. The defendants' insurer, State Farm, had denied coverage based on the alleged non-renewal of the main insurance policy at issue and did not provide its insureds with a defense. Neither defendant entered an appearance in the case and asset searches did not locate any significant collectable assets.

EXHIBIT 2

18.

Due to the procedural complexity of the insurance coverage and foreign jurisdictional issues and the significant risk of that no money would be recovered on the judgment, Michael Werner represented and agreed at the time that he assigned the case, and on other occasions, that Hoipkemier's share of any attorney's fees received by the Werner Firm would be increased from 20% to 50% to incentivize him to work on the case.

19.

Subsequently, Michael Werner acknowledged and promised to perform the 50/50 fee split agreement with Hoipkemier on the *Thompson* case on multiple occasions, including on the last day of Hoipkemier's employment with the firm.

20.

Hoipkemier retained and managed two Canadian firm's efforts to enforce the *Thompson* judgment in Ontario, served extensive written discovery and pleadings, filed three separate garnishment actions seeking to collect on insurance policies held by the owner of vehicle involved in the wreck, and exclusively handled settlement negotiations with counsel for the insurers and defendants.

21.

Hoipkemier spent well over 100 hours on the *Thompson* case. No other attorney with the Werner Firm performed any meaningful post-judgment work on the file.

22.

As a direct result of Hoipkemier's time, skill, and efforts expended in the *Thompson* case, State Farm paid a policy limit settlement in May 2016.

23.

The Werner Firm's contingency fee in the *Thompson* case was earned at the time of State Farm's payment, as was Hoipkemier's share of the fee.

EXHIBIT 2

24.

Hoipkemier is entitled to fifty percent (50%) of the attorney's fees received by The Werner Firm in the *Thompson* case, roughly $100,500, based on the parties' agreement.

25.

Hoipkemier has demanded his fifty percent (50%) share of the fee earned in the *Thompson* case. The Werner Firm has paid nothing.

26.

The Werner Firm represented to Hoipkemier that his claimed share of the fee has been escrowed. Upon information and belief, the Werner Firm is in possession of identifiable settlement funds paid in the *Thompson* case that were rightfully earned and owed to Hoipkemier.

### Unpaid Compensation II: The *Bain* Case

27.

The *Bain* case was a consumer class action lawsuit asserting a violation of the Georgia Lease-purchase Agreement Act. Like the other class actions handled by the firm, Hoipkemier originated the *Bain* case.

28.

Hoipkemier is entitled to 40% of the attorney's fees received by the Werner Firm in the *Bain* case under the terms of the Employment Agreement. (Paragraphs 6-7, *supra*.)

29.

The *Bain* case settled under terms including payment of $87,500.00 in attorney's fees divided equally between The Werner Firm and its co-counsel Fortson Bentley & Griffin, P.C.

30.

The Werner Firm has refused to pay Hoipkemier the full forty percent ($17,500) share of attorney's fees it received in the *Bain* case without defense or justification.

KH415190.DOCX — 6 —

EXHIBIT 2

31.

The Werner Firm is in possession of identifiable settlement funds paid in the *Bain* case that were rightfully earned by and owed to Hoipkemier.

32.

Hoipkemier sent multiple demands for payment for his share of the fees earned in the *Bain* case.

33.

The Werner Firm paid nothing in response to the demands.

Settled Class Actions: *Felix* and *Dorado*

34.

In the summer of 2015, Hoipkemier originated a group of class action cases asserting similar theories for breach of contract related to the improper collection of "post-payment interest" on FHA-insured mortgage loans.

35.

Two of the cases settled: *Felix v. SunTrust Mortgage, Inc.*, Case Number 2:16-CV-00066-RWS, United States District Court for the Northern District of Georgia ("Felix") and *Dorado v. Bank of America, N.A.*, Case Number 1:16-cv-21147-CIV-UU, United States District Court for the Southern District of Florida ("Dorado").

36.

Hoipkemier personally researched and developed the case theories and worked up the cases from beginning to end.

37.

Hoipkemier's efforts represented all or substantially all of the substantive legal work performed by the Werner Firm on the *Felix* and *Dorado*. No other Werner Firm attorney performed any appreciable work on the cases

38.

To Hoipkemier's knowledge, Michael Werner has never spoken with Veronica Dorado or Sarah Felix.

EXHIBIT 2

39.

The Werner Firm has a *quantum meruit* fee interest in the *Felix* and *Dorado* cases exclusively because of Hoipkemier's origination of the cases for the firm and investment of his time, skill, and efforts.

40.

Hoipkemier is entitled to forty percent (40%) of the attorney's fees received by the Werner Firm on the *Felix* and *Dorado* cases under the plain terms of his employment agreement. (Paragraph 6, *supra*.)

41.

However, the Werner Firm refuses to acknowledge Hoipkemier's contractual rights and contends that he is not entitled to any of the fees received by the firm.

42.

The parties have agreed that any fees awarded to EHDH in *Felix* and *Dorado* will be held in escrow by First American Bank & Trust Company in Athens, Georgia pending a judicial determination of the parties' respective rights or other resolution.

### Registry Funds: The *Oak Park* Case

43.

The *Oak Park* case is a consumer class action that Hoipkemier brought when he joined in the firm in September 2014.

44.

Based on the terms of the Employment Agreement, Hoipkemier is entitled to fifty percent (50%) of the fees received by the firm.

45.

The settlement agreement in the *Oak Park* case went through several iterations and was settled in final form on February 26, 2016, and the settlement was approved by the Court on August 12, 2016.

EXHIBIT 2

46.

According to the terms of the Final Order, the Werner Firm received an attorney fee award of $96,063.00, which was shared with co-counsel at The Stoddard Firm.

47.

The parties agreed to a consent order distributing $69,298.68 from the registry of court in Glynn County, Georgia consisting of case expenses and The Stoddard Firm's share of the fee award ($26,658.61).

48.

The Werner Firm's share of the fee award ($69,404.31) remains in the registry of court.

49.

Hoipkemier is entitled to fifty percent of the registry funds ($34,702.19) according to the terms of the Employment Agreement.

## COUNT ONE: DECLARATORY JUDGMENT
### (*FELIX* AND *DORADO*)

50.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

50.

The terms of the Employment Agreement clearly and unambiguously provide that Hoipkemier is entitled to forty percent (40%) of the fees received by the firm on cases he originated.

51.

It is undisputed that Hoipkemier originated *Felix* and *Dorado* for the firm.

53.

Still, the Werner Firm disputes that Hoipkemier is entitled to agreed percentage share of the attorney's fees received by the firm.

EXHIBIT 2

54.

There is an actual and live controversy between the parties under O.C.G.A. § 9-4-2.

55.

The Werner Firm has misappropriated and refused to pay fee-sharing compensation earned by Hoipkemier in the *Thompson* and *Bain* cases, and is likely to do so again with the *Felix* and *Dorado* fees if it receives Hoipkemier's share of the fees.

56.

The parties have agreed to escrow any fees earned in *Felix* and *Dorado*. A declaratory judgment establishing the parties' respective rights is needed to guide First American Bank & Trust or other escrow agent prior to any disbursement of the Werner Firm's share of the fees in *Felix* or *Dorado*.

## COUNT TWO: DECLARATORY JUDGMENT
### (*OAK PARK* REGISTRY FUNDS)

57.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

58.

Hoipkemier brought the *Oak Park* case to the firm, entitling Hoipkemier to fifty percent (50%) of the fees received by the firm under the Employment Agreement.

59.

Still, the Werner Firm disputes that Hoipkemier is entitled to 50% of the attorney's fees received by the firm in contravention of the Employment Agreement.

60.

The parties' respective rights in the *Oak Park* fee are uncertain absent an order from this Court.

EXHIBIT 2

61.

There is an actual and live controversy between the parties under O.C.G.A. § 9-4-2.

62.

The $69,404.31 in fees earned by the firm in the *Oak Park* case are being held in the registry of the Superior Court of Chatham County.

63.

A court order is needed to inform clerk of the parties' respective legal rights and obtain disbursement of the fees.

64.

Hoipkemier is entitled to a declaratory judgment affirming his right to fifty percent of the registry funds in the *Oak Park* case ($34,702.19).

### COUNT THREE: BREACH OF CONTRACT
### (THE *THOMPSON* AND *BAIN* CASES)

65.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

66.

Hoipkemier and the Werner Firm formed a contract covering compensation for services that he performed as an attorney with the firm.

67.

The firm owes Hoipkemier a 50% share of the fees received on the *Thompson* case, or roughly $100,500.

68.

The firm owes Hoipkemier a 40% share of the final installment payment due under the settlement agreement in the *Bain* case, or roughly $10,000.

69.

By refusing to pay fees earned by Hoipkemier on the *Thompson* and *Bain* cases after multiple demands, the Werner Firm has breached the plain terms of

EXHIBIT 2

Hoipkemier's employment contract.

70.

Hoipkemier is entitled to damages caused by the Werner Firm's breaches of contract in an amount to be determined by the jury at trial, along with pre-judgment interest and attorney's fees pursuant to O.C.G.A. § 13-6-11 based on the firm acting in bad faith, being stubbornly litigious, and putting Hoipkemier through unnecessary trouble and expense.

## COUNT FOUR: CONVERSION
### (THE *THOMPSON* FEE)

71.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

72.

The *Thompson* settlement proceeds were deposited and held in accounts owned or controlled by the Werner Firm. The *Thompson* settlement proceeds are a specific, traceable, and identifiable fund.

73.

The Werner Firm has wrongfully exercised dominion or control over Hoipkemier's 50% share of the fee earned in the *Thompson* case by refusing to pay the money on demand.

74.

The Werner Firm converted Hoipkemier's 50% share of the attorney's fees earned in the *Thompson* case.

75.

The Werner Firm's actions in withholding rightfully earned fees show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to conse-quences.

EXHIBIT 2

76.

Hoipkemier is entitled to punitive damages to punish and deter The Werner Firm from engaging in similar conduct in the future under O.C.G.A. § 51-12-5.1.

77.

Hoipkemier is entitled to recover damages for the Werner Firm's wrongful conversion of money earned on the *Thompson* case, along with attorney's fees under O.C.G.A. § 13-6-11 and punitive damages based on the firm acting in bad faith, being stubbornly litigious, and putting Hoipkemier through unnecessary trouble and expense.

## COUNT FIVE: PROMISSORY ESTOPPEL
### (THE *THOMPSON* CASE)

78.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

79.

Michael Werner promised Hoipkemier on multiple occasions that he would receive fifty percent (50%) of any attorney's fees received by the Werner Firm in the *Thompson* case.

80.

Hoipkemier reasonably relied on Michael Werner's promise to share fees 50/50 on the *Thompson* case to his detriment.

81.

Hoipkemier is entitled to enforce Michael Werner's promise that he would receive 50% of the attorney's fees earned by the Werner Firm in the *Thompson* case under the doctrine of promissory estoppel.

EXHIBIT 2

## COUNT SIX: QUANTUM MERUIT
## (IN THE ALTERNATIVE TO COUNTS ONE, TWO, AND THREE)

### 82.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

### 83.

If and only if a determination is made that the September 25, 2014 contract is unenforceable, Hoipkemier is entitled to recover in *quantum meruit* the value of the legal work he performed to earn hundreds of thousands of dollars in fees for the Werner Firm.

### 84.

From April 2015 (when Hoipkemier originated *Felix* and *Dorado*) through the date his employment ended in June 2016, the Werner Firm paid Hoipkemier a base salary of approximately $75,000.

### 85.

Based on the settlements in the *Dorado* and *Felix* cases alone, the Werner Firm is likely to receive more than $500,000 in fees originated by Hoipkemier.

### 86.

The value of Hoipkemier's services to the firm far exceeded the amount he received in base salary. Indeed, the Werner Firm and Hoipkemier tacitly recognized this fact by agreeing that Hoipkemier would receive a forty percent (40%) share of any fee based on case origination.

### 87.

Allowing the Werner Firm to avoid its 60/40 fee sharing agreement with Hoipkemier and all of the attorney's fees earned as a result of Hoipkemier's work and efforts would be unjust and result in an unfair windfall for the Werner Firm.

### 88.

If the Employment Agreement is unenforceable, Hoipkemier is entitled to recover the reasonable value of his services in excess of the base salary paid to

EXHIBIT 2

him by The Werner Firm.

## COUNT SEVEN: UNJUST ENRICHMENT
## (IN THE ALTERNATIVE TO COUNTS ONE THROUGH THREE)

89.

Hoipkemier incorporates the allegations of the preceding paragraphs as if set forth herein.

90.

**If and only if** the Employment Agreement is unenforceable with respect to Hoipkemier's fee-sharing interest in the matters detailed above, then Hoipkemier is entitled to compensation to prevent the firm's unjust enrichment.

91.

Hoipkemier performed work for the firm with the reasonable expectation that he would receive fee-sharing compensation in excess of his base salary.

92.

The value of Hoipkemier's services to the firm far exceeded his base salary, in that his work generated hundreds of thousands of dollars in fees to the firm.

93.

Hoipkemier conferred a benefit on the firm in the form of originated cases and legal work which the firm equitably ought to compensate him for and is entitled to judgment against the firm in the amount of that excess benefit.

## COUNT EIGHT: MONEY HAD AND RECEIVED
## (IN THE ALTERNATIVE TO COUNTS ONE THROUGH THREE)

94.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

95.

**If and only if** the Court determines that no contract covers Hoipkemier's right to fee-sharing compensation in the *Thompson, Bain* and/or *Oak Park* cases,

EXHIBIT 2

then equity and good conscience require that the firm not be permitted to keep the entirety of fees that it promised and agreed to share with Hoipkemier.

96.

Demand for payment has been made and refused by the firm.

97.

Hoipkemier is entitled to recover from the firm the share of fees rightfully belonging to him in the *Thompson, Bain* and *Oak Park* cases under the doctrine of money had and received.

### COUNT NINE: ATTORNEY'S FEES

98.

Hoipkemier incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

99.

The Werner Firm has acted in bad faith, been stubbornly litigious, and caused Hoipkemier unnecessary trouble and expense by withholding earned compensation and refusing to acknowledge plain contractual rights, forcing the filing of this lawsuit.

100.

Hoipkemier is entitled to recover his costs including reasonable attorney's fees from the firm under O.C.G.A. § 13-6-11.

WHEREFORE Hoipkemier prays for the following relief:

(a) Trial by a jury of twelve on any claims so triable;

(b) Entry of a Final Declaratory Judgment under Count One ordering and adjudging that, under the terms of the Employment Agreement, Hoipkemier is entitled to forty percent (40%) of the attorney's fees that the Werner Firm receives in the *Felix* and *Dorado* cases;

(c) Entry of a Final Declaratory Judgment under Count Two ordering and adjudging that Hoipkemier is entitled to share in the attorney's fees received by the Werner Firm in the *Oak Park* and *Bain* cases according to the

EXHIBIT 2

terms of the Employment Agreement;

(d) Entry of a Final Judgment on Count Three awarding Hoipkemier an amount not less than $110,000 for the Werner Firm's breach of contract relating to the *Thompson* and *Bain* cases;

(e) Entry of Final Judgment on Count Four awarding Hoipkemier an amount not less than $110,000 for the Werner Firm's conversion of Hoipkemier's share of the *Thompson* fee, along with attorney's fees, prejudgment interest, and punitive damages.

(f) In the alternative to Count Three, entry of Final Judgment on Count Five awarding Hoipkemier an amount not less than $110,000 in promissory estoppel, along with attorney's fees and prejudgment interest.

(g) In the alternative to Counts One, Two and Three, final judgment on Count Six awarding Hoipkemier the value of the services provided to the Werner Firm in any of the cases detailed above in which the firm receives a fee in *quantum meruit*;

(h) In the alternative to Counts One, Two and Three, final judgment on Count Seven awarding Hoipkemier the value of the services received by the Werner Firm in any of the cases detailed above in which the firm receives a fee to prevent unjust enrichment;

(i) In the alternative to Counts Two and Three, final judgment on Count Eight awarding Hoipkemier the value of the fee-sharing money he is rightfully entitled to in the *Thompson, Bain,* and *Oak Park* cases;

(j) Entry of a constructive trust with respect to Hoipkemier's interest in any fees received by the Werner Firm in any of the cases in which the firm receives a firm;

(k) Prejudgment interest under O.C.G.A. § 7-4-2 and as otherwise provided by law;

(l) An award of attorney's fees under O.C.G.A. § 13-6-11;

EXHIBIT 2

(m) An award of punitive damages under O.C.G.A. § O.C.G.A. § 51-12-5.1; and

(n) Such other and further relief as this Court deems just and proper.

This 24th day of March 2017.

Respectfully submitted,

**KREVOLIN & HORST, LLC**

*/s/ Jonathan E. Hawkins*
Jonathan E. Hawkins
Georgia Bar No. 338779
hawkins@khlawfirm.com
Cameron W. Ellis
Georgia Bar No. 974199
ellis@khlawfirm.com

One Atlantic Center
1201 W. Peachtree St. NW, Suite 3250
Atlanta, GA 30309
(404) 888-9700
*Counsel for Plaintiff*

EXHIBIT 2